**Willard CRIMM, Appellant,**

v.

**MISSOURI PACIFIC RAILROAD COMPANY, a corporation, Appellee.**

**No. 83–2363.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 11, 1984.

Decided Dec. 19, 1984.

Louis Gilden, St. Louis, Mo., for appellant.

Richard E. Jaudes and Bradley S. Hiles, St. Louis, Mo., for appellee.

Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Willard Crimm appeals from a final judgment entered in the District Court [1] for the Eastern District of Missouri upon a jury verdict in favor of his former employer, Missouri Pacific Railroad Company (Mo-

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern and Western Districts of Missouri.

Pac), in an action for damages under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 (1982) (ADEA). For reversal appellant argues that the district court erred in (1) giving a verdict director instruction which confused and misled the jury and which was contrary to the law, (2) refusing to give a circumstantial evidence instruction, (3) limiting cross-examination about the female worker's shoplifting conviction and prior drug use, (4) refusing to admit evidence concerning MoPac's Senior Transition Program, (5) refusing to grant a mistrial after a juror disclosed during trial that he had been accused of sexual harassment, (6) refusing to admit into evidence appellant's deposition testimony, (7) taking judicial notice of an EEOC regulation on strict liability and presenting it to the jury as law, (8) admitting handwritten notes and an investigation report, (9) refusing to admit into evidence appellant's opinion testimony concerning the ultimate factual issue, and (10) refusing to allow appellant to argue or comment on certain admitted evidence. For the reasons discussed below, we affirm the judgment of the district court.

Appellant was 60 years old when he retired in April 1982 from the position of Superintendent of the St. Louis Terminal Division for MoPac. He claims that he was forced to resign because of his age. MoPac alleges that appellant was terminated because he sexually harassed a subordinate.

Appellant began working for MoPac in 1943 and worked his way up through the ranks to Superintendent of the St. Louis Terminal Division. Appellant had the ultimate authority to transfer, promote, and terminate the Division's 2,000 employees and personally participated in the hiring of all Division employees.

Appellant hired Diana Austin as a laborer in July 1980 and assigned her to the Division's Dupo, Illinois, train yard. From January 1981 to October 1981, Austin contacted appellant monthly by telephone concerning a transfer to a clerk's position. Following a telephone conversation on Oc-

tober 6, 1981, appellant visited Austin's home.

The events which took place at Austin's home are disputed. Appellant testified that he stood inside the door and talked to Austin for five to eight minutes regarding her complaint about her union chairman. Austin testified that appellant discussed the transfer to the clerk's position and following the conversation made sexual advances to her. He allegedly embraced her, kissed her, and attempted to put his hand under her sweater and to lead her into the bedroom. Austin resisted and appellant left.

Austin discussed the incident with her boyfriend, Joe Klaus, and her sister, Deborah Converse. Converse testified that she observed appellant holding Austin and that she answered the telephone when appellant later called Austin about the job. Klaus called appellant's house twice on the day of the incident and also contacted an attorney.

On October 8, 1981, Austin complained about the incident to her supervisor, Mike Middleton, to her union secretary, and to top union officials in her local. Middleton reported the alleged incident to his supervisor, Ben Wiggans, who reported the complaint to appellant. Appellant denied the incident and instructed Wiggans to discuss the matter with Austin.

Wiggans went to the Dupo train yard and talked with Austin, who told Wiggans about the alleged sexual harassment. Following Wiggans' conversation with Austin on October 8, 1981, appellant instructed Wiggans to give Austin the clerk's position. Austin began work as a clerk the following Monday.

Approximately one month later, a MoPac supervisor reported the incident to Arthur Shoener, MoPac's General Manager in Little Rock, Arkansas, and appellant's immediate supervisor. Shoener, assisted by a MoPac special agent, was authorized by K.D. Hestes, MoPac's Assistant Vice President of Operations, to conduct an investigation of the incident.

Shoener interviewed Wiggans, Middleton, Austin, Converse, Klaus, and appellant. Shoener took notes during the interviews and later added to them. He also prepared a typewritten investigative report, which was submitted to Hestes and J.W. Gessner, President of MoPac. After consulting with Mark Hennelly, MoPac's Senior Vice President of Law, Hestes and Gessner decided to remove appellant from the position of superintendent and keep him on the active payroll until his sixtieth birthday, at which time he could retire with an officer's pension.

Appellant's position was subsequently filled by a thirty-two year old man, who had been superintendent of MoPac's Palestine, Texas, Division for the previous four years.

On April 22, 1982, appellant filed a charge of age discrimination with the Equal Employment Opportunity Commission. He subsequently initiated this lawsuit on August 11, 1982. A jury trial commenced on September 14, 1983, and ended on September 20, 1983. The jury returned a verdict for MoPac and this appeal followed.

*Motions in Limine*

■ Appellant argues that the district court abused its discretion in granting MoPac's motion in limine which prevented appellant from cross-examining Diana Austin on her responses on her Initial Contact Interview Form completed in 1979. Austin stated on this pre-employment form that she had not been convicted of a violation of the law other than a minor traffic offense when in fact she had been convicted of the crime of retail theft under $150.00 one year earlier in 1978. Austin admitted during the deposition that she had answered "no" to the question of conviction because she believed that the shoplifting conviction had been expunged and appellant's secretary told her to answer that query in the negative. Appellant argues that the district court's granting of the motion in limine effectively eliminated the credibility of MoPac's key witness from consideration by the jury and thus the district court in effect directed a verdict in favor of MoPac.

We need not decide whether the evidence was admissible for impeachment purposes under Fed.R.Evid. 609(a) which prohibits the admission of conviction evidence unless the crime is "punishable by death or imprisonment in excess of one year" or "involves dishonesty or false statement" because the district court properly excluded the evidence under 608(b).

Fed.R.Evid. 608(b) grants the district court discretion to permit a witness to be cross-examined on specific instances of conduct probative of a witness' character for truthfulness or untruthfulness. The district court held that the alleged falsification of the application was not probative of Austin's truthfulness because the falsification occurred two years before the sexual harassment incident and Austin subsequently admitted the conviction on a MoPac employment application completed in 1980 and in the deposition. Further, Austin stated that she had answered "no" on the first application because she had mistakenly thought the conviction was to be expunged from her record and because appellant's secretary had said that this was correct in light of the expungement. The district court did not abuse its discretion in determining that this evidence was inadmissible.

■ Appellant next argues that the district court abused its discretion in granting defendant's motion in limine which prevented appellant from cross-examining Austin and her boyfriend concerning their use of marijuana two or three years before the sexual harassment incident. Appellant argues that the testimony of these two witnesses as to the periods during which they had smoked marijuana together was in conflict, that MoPac knew of Austin's use of marijuana, and that this evidence was related to pretext because prior drug use would indicate unreliability and untruthfulness.

The district court did not abuse its discretion in holding that "illegal drug use or

transactions, without more, do not show untruthfulness." *United States v. Hastings,* 577 F.2d 38, 41–42 (8th Cir.1978). The district court under Rule 608(b) may determine if evidence is probative of truthfulness and under Rule 403 may exclude evidence, even though probative, if the probative value is outweighed by the prejudicial effect.

■ Appellant next argues that the district court abused its discretion in granting MoPac's motion in limine which prevented appellant from introducing evidence concerning MoPac's Senior Transition Program (STP). This program was initiated about one year after appellant resigned. Appellant argues that this program, which ostensibly was a voluntary retirement program, was actually a means of forcing out older employees and replacing them with younger employees, at a substantial savings to MoPac. Appellant argues that the STP is discriminatory and that this evidence is probative to show circumstantially that he too was the subject of discrimination. Appellant advised that he would offer 39 STP exhibits and call several witnesses. MoPac indicated that it would call numerous witnesses and introduce many exhibits because 197 persons had gone through the program.

The district court held that the evidence concerning the STP would result in extensive evidence on collateral issues and that the slight probative value of the proposed evidence justified its exclusion under Fed. R.Evid. 403. The court did not abuse its discretion in excluding this evidence.

### Denial of a Motion for Mistrial Because of Juror Misconduct

Appellant argues that the district court erred in denying his motion for mistrial after a juror admitted that he had lied during voir dire. The juror, on the second day of trial, advised the district court that he "had had a sexual discrimination complaint filed against him" and as a result he had very "strong emotions" about sexual harassment and some "definite feelings" concerning "sex discrimination in general."

■ Appellant initially sought a mistrial, which was denied. Appellant, however, (contrary to his position on appeal) expressly agreed to the juror remaining on the jury and opposed having the juror replaced by the alternate. Appellant may not on appeal object to potential juror bias when he opposed a remedy which would have eliminated the bias. *Delgado v. United States,* 403 F.2d 208, 209 (9th Cir.), *cert. denied,* 394 U.S. 966, 89 S.Ct. 1320, 22 L.Ed.2d 568 (1968); *see United States v. Verkuilen,* 690 F.2d 648, 658 (7th Cir.1982). Moreover, the juror in question was, under the circumstances, probably biased in favor of appellant, rather than against him. The district court did not commit error.

### Rejection of Deposition Evidence

■ Appellant argues that the district court erred in refusing to admit into evidence the deposition of MoPac's managing agent, Arthur Shoener. The district court sustained MoPac's objection because Shoener was to be called later in the trial. Appellant argues that the deposition should have been admitted as an admission of a party opponent to show the inconsistency of Austin's statements.

The district court erred in excluding the testimony of Shoener. Fed.R.Civ.P. 32(a)(2) states:

(2) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party may be used by an adverse party for any purpose.

Whether an individual has the status of managing agent depends on several factors, including whether the interests of the individual "are identified with those of his principal and on the nature of his functions, responsibilities and authority ...." *Terry v. Modern Woodmen,* 57 F.R.D. 141, 143 (W.D.Mo.1972), *citing Tomingas v. Douglas Aircraft Co.,* 45 F.R.D. 94 (S.D.N.Y. 1968). At the time of the deposition Shoen-

er was a general manager for MoPac and had responsibility for 56,000 employees and 4,300 miles of track. Shoener had "sufficient power and discretion to be classified a 'managing agent.'" *Colonial Capital Co. v. General Motors Corp.*, 29 F.R.D. 514, 518 (D.Conn.1961). Therefore, his deposition was admissible under Fed.R.Civ.P. 32(a)(2).

The district court, however, did not commit reversible error. Federal appellate courts have held that the exclusion of deposition evidence is harmless if the material matters covered in the deposition are covered, or could have been covered, at trial. "Even if the deposition was properly admissible under [Fed.R.Civ.P.] 32(a)(2) [pertaining to "managing agents"], we believe that any possible error was not prejudicial and was in fact harmless. The deposition contains no information that [the witness'] live testimony could not supply." *Jackson v. Chevron Chemical Co.*, 679 F.2d 463, 466 (5th Cir.1982); *see Fenstermacher v. Philadelphia National Bank*, 493 F.2d 333, 338 (3d Cir.1974).

*Admission of Shoener's Handwritten Notes and Internal Investigative Report*

█ Appellant argues that the district court erred in admitting into evidence, as business records, handwritten notes and an investigative report prepared by Shoener, based on his observations and conversations with appellant, Austin, MoPac staff, and others because (1) the notes and report were not contemporaneously prepared, (2) the investigation report was prepared for use in litigation or an adversary proceeding, and (3) the statements contained therein were clearly hearsay.

Appellant's argument is without merit. The record does not support appellant's assertion that these documents are hearsay. MoPac offered the documents to demonstrate that MoPac had conducted an in-vestigation and to disclose the information that MoPac had relied on in making its decision. The records were not offered to prove the truthfulness of the statements contained therein. *See Moore v. Sears Roebuck and Company*, 683 F.2d 1321, 1322 (11th Cir.1982).

█ Even if we accept appellant's argument that the records are hearsay, they are admissible under the business records exception. MoPac had a written policy requiring that in an investigation of sexual harassment the conversations of those interviewed "should be documented through written memoranda." Shoener was directed to conduct an investigation and to prepare such memoranda. Shoener took handwritten notes during the interviews and added to them shortly after the interviews. The typewritten report was prepared from the notes. Only six or seven days elapsed from the beginning of the investigation to the completion of the report. The notes and report were prepared nine months before any complaint or suit had been filed and the notes and report were maintained at the MoPac office. Fed.R.Evid. 803(6). *See Gibbs v. State Farm Mutual Insurance Co.*, 544 F.2d 423, 428 (9th Cir.1976); *Smith v. Universal Service, Inc.*, 454 F.2d 154, 157–58 (5th Cir.1972).

*Judicial Notice of an EEOC Regulation*

Appellant argues that the court erred (1) in taking judicial notice of an EEOC regulation on sexual harassment, 29 C.F.R. § 1604.11[2] because violation of an EEOC regulation was not an issue in this case and (2) in incorrectly presenting the regulation as having the force of law and as imposing strict liability on an employer for the sexual harassment of its employees.

█ Appellant's arguments are without merit. The district court may take

---

2. 29 C.F.R. § 1604.11 reads in part as follows:
   Harassment on the basis of sex is a violation of § 703 of Title VII, [42 U.S.C. § 2000e et seq.].
   . . . .
   An employer ... is responsible for the acts of its supervisory employees with respect to sexual harassment regardless of whether the specific acts complained of were authorized or even forbidden by the employer and regardless of whether the employer knew or should have known of their occurrence.

judicial notice of the Federal Register and the Code of Federal Regulations.[3] 44 U.S.C. § 1507 (1982) (Federal Register may be judicially noticed); *Wei v. Robinson*, 246 F.2d 739, 743 (7th Cir.1957) (Code of Federal Regulations and the Federal Register are required to be judicially noticed); *Kempe v. United States*, 151 F.2d 680, 684 (8th Cir.1945). MoPac offered the regulation to show that MoPac could be liable for the action of its employees who sexually harass other employees. The district court did not abuse its discretion in admitting the evidence.

◼ Appellant's other point of error is that the district court described the regulation to the jury as having the force of law and as imposing strict liability on employers. Appellant is correct in his assertions that EEOC regulations do not have the force of law, *General Electric Co. v. Gilbert*, 429 U.S. 125, 141, 97 S.Ct. 401, 410, 50 L.Ed.2d 343 (1976), and that the employer is not strictly liable for all types of sexual harassment. *Katz v. Dole*, 709 F.2d 251, 255 (4th Cir.1983); *Henson v. City of Dundee*, 682 F.2d 897, 909–10 (11th Cir.1982); *Bundy v. Jackson*, 641 F.2d 934, 943 (D.C. Cir.1981). This case, however, involves "quid pro quo" sexual harassment, *i.e.*, a supervisor allegedly requested sexual favors in exchange for job benefits. *Henson v. City of Dundee*, 682 F.2d at 908 n. 18. Many cases have held that "quid pro quo" sexual harassment violates Title VII and that the employer is strictly liable. *Katz v. Dole*, 709 F.2d at 255 n. 6; *Henson v. City of Dundee*, 682 F.2d at 910; *Bundy v. Jackson*, 641 F.2d at 943; *Miller v. Bank of America*, 600 F.2d 211, 213 (9th Cir. 1979); *Barnes v. Costle*, 561 F.2d 983, 993 (D.C.Cir.1977). Therefore, the district court did not misstate the law on sexual harassment as it pertains to this case.

*Refusal to Permit Witness to Testify on the Ultimate Issue*

◼ Appellant argues that the district court erred in refusing to permit appellant's witness J.D. Boling to testify that he believed appellant's age was a factor in his termination while permitting Shoener and Hestes to testify. The district court did not abuse its discretion in excluding this evidence. *Bohannon v. Pegelow*, 652 F.2d 729, 732 (7th Cir.1981). Fed.R.Evid. 701(a) permits a lay witness to give opinion testimony only if his opinion is rationally based on his perception. Boling had been Assistant Superintendent under appellant for fifteen years, but he had no firsthand knowledge of the factors involved in MoPac's decision to remove appellant. Shoener and Hestes on the other hand were not asked to give opinion testimony but were asked to testify as to what they did, *i.e.*, whether they considered appellant's age.

*Denial of Argument Concerning a Photograph*

Appellant argues that the district court erred in prohibiting comment and argument on a photograph of Austin's living room, which showed a wall-mounted picture of Zig-Zag paper [4] and could suggest the possible use of marijuana. The district court prohibited any reference to the possible use of marijuana as having no probative value on the issue of truthfulness. The court did not abuse its discretion.

*Verdict Director Instruction*

Appellant argues that the verdict director instruction misled and confused the jury because it misstated the law, did not address material issues in the case, contained facts that had no factual or legal basis, and was biased in favor of the defendant.

◼ The law in this and other circuits is clear on the standard of appellate review of jury instructions. Instructions must be

---

**3.** 29 C.F.R. § 1604 was published in the Federal Register at 37 Fed.Reg. 6836 on April 5, 1972. The Code of Federal Regulations is a special or supplemental edition of the Federal Register, 44 U.S.C. § 1510 (1982), and therefore may be judicially noticed under the Federal Register Act. 44 U.S.C. § 1507 (1982).

**4.** A commercial product commonly used to roll marijuana cigarettes.

"read as a whole and considered in light of the entire charge." *Tribble v. Westinghouse Electric Corp.,* 669 F.2d 1193, 1197 (8th Cir.1982), *cert. denied,* 460 U.S. 1080, 103 S.Ct. 1767, 76 L.Ed.2d 342 (1983); *King v. State Farm Life Insurance Co.,* 448 F.2d 597, 600, 601 (8th Cir.1971). When the charge is considered as a whole, it should state the "governing law fairly and correctly" and should not be "inflammatory or unfair or prejudicial" to either the plaintiff or the defendant. *Hartman v. United States,* 538 F.2d 1336, 1346 (8th Cir.1976). "Where the instructions, considered as a whole, adequately and sufficiently state the generally applicable law, the fact that the instructions are technically imperfect or are not a model of clarity does not render the charge erroneous." *Tribble v. Westinghouse,* 669 F.2d at 1197; *see Garnatz v. Stifel, Nicholaus & Co.,* 559 F.2d 1357, 1362 (8th Cir.1977), *cert. denied,* 435 U.S. 951, 98 S.Ct. 1578, 55 L.Ed.2d 801 (1978). Each of the deficiencies claimed by appellant will be reviewed against this standard.

■■■ Appellant argues first that the district court erred in requiring him to prove as part of his prima facie case that he had complied with MoPac's rules and regulations. Appellant argues that the plaintiff need not anticipate and refute the employer's legitimate, nondiscriminatory reasons in order to establish his prima facie case. Appellant argues that such proof is inconsistent with the prima facie case set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (*McDonnell Douglas*). We agree.

The indirect method of proof of discrimination approved by the Supreme Court in *McDonnell Douglas* and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981) (*Burdine*), is but one way of establishing a case of employment discrimination. *Halsell v. Kimberly Clark Corp.,* 683 F.2d 285, 290 (8th Cir.1982), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983). "*McDonnell-Douglas* was never intended to be rigid, mecha-

nized or ritualistic. Rather it is merely a sensible orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

In *Halsell v. Kimberly Clark Corp.,* 683 F.2d at 290, this court adopted the First Circuit's modification of the *McDonnell Douglas* and *Burdine* formulas for discriminatory discharge claims set forth in *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1013–14 (1st Cir.1979). In the absence of direct evidence of discrimination, the plaintiff must "prove that he [or she] was in the protected age group, that he [or she] was performing his [or her] job at a level that met [the] employer's legitimate expectations, that he [or she] was nevertheless fired, and that [the] employer sought someone to perform the same work after he [or she] left." *Id.* at 1014. Unlike hiring cases in which the issue is whether the plaintiff was qualified for the job, the issue in discharge cases is whether the plaintiff was satisfactorily performing the job. As noted by the Ninth Circuit in *Douglas v. Anderson,* 656 F.2d 528, 533 n. 5 (9th Cir. 1981), "[t]he issue of satisfactory job performance permeates the prima facie case as well as the rebuttal and pretext issues. In establishing a prima facie case, [the plaintiff] need only produce substantial evidence of satisfactory job performance sufficient to create a jury question on this issue." Thus, consistent with *McDonnell Douglas* and *Burdine,* we hold that in order to establish a prima facie case, the plaintiff need only prove that "he [or she] was doing his [or her] job well enough to rule out the possibility that he [or she] was fired for inadequate job performance." *Loeb v. Textron, Inc.,* 600 F.2d at 1013.

For this reason, we hold that the district court erred in instructing the jury that appellant was required to prove compliance with MoPac's rules and regulations in order to establish a prima facie case. As discussed above, appellant produced substantial evidence that he had performed

satisfactorily as superintendent, at least until the incident in question in October 1981. This evidence was sufficient to establish a prima facie case.

Appellant argues that this instruction error mandates reversal because the jury could have improperly found that appellant did not prove compliance with MoPac's rules and regulations and thus failed to establish a prima facie case. Ordinarily such an instruction error would be grounds for reversal. However, we think the instruction error was harmless in this case. In the present case, the evidence that appellant was discharged for a legitimate, nondiscriminatory reason is very strong and undermines any inference of discrimination.[5] MoPac introduced uncontradicted evidence that it had received a complaint that appellant had sexually harassed a subordinate and that it had conducted an investigation of the complaint. Appellant attempted to demonstrate pretext by attacking the credibility of the complaining employee and by showing minor inconsistencies in the statements of MoPac's witnesses. None of appellant's evidence, even if accepted as true, establishes that MoPac discharged appellant because of his age. In the present case, we are concerned not with whether MoPac was correct in its determination that appellant sexually harassed a subordinate, but only with whether this was the real reason for the termination and not a pretext for age discrimination. *Douglas v. Anderson,* 656 F.2d at 533 n. 5.

Appellant next argues that the court failed to submit to the jury all the reasons offered by MoPac to justify appellant's termination. Specifically, the instruction did not include an alleged theft of cedar posts and a grain spill as reasons for termination. Appellant argues that the inclusion of these reasons would have permitted the jury to find that all of the reasons were pretextual.

■ The employer in an ADEA case must articulate a legitimate, non-discriminatory reason, which is specific and clear enough for the employee to address, *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094; *Halsell v. Kimberly Clark Corp.,* 683 F.2d at 292, and legally sufficient to justify a judgment for the employer, *Burdine,* 450 U.S. at 255, 101 S.Ct. 1094. The employer must demonstrate reasonable factors other than age for discharge. *Loeb v. Textron, Inc.,* 600 F.2d at 1011. The jury, in order to find for the defendant, must find that the articulated reasons are not pretextual.

■ In the present case appellant may not complain of error when his proposed instruction (No. 19) did not list the grain spill or theft as reasons for termination. In addition, appellant did not specifically object to the exclusion of these factors from the district court's instruction. Fed. R.Civ.P. 51; *Goodman v. Heublein, Inc.,* 645 F.2d 127, 131 (2d Cir.1981). Furthermore, even if appellant had properly preserved this issue for review, there is no error because MoPac offered only one reason for appellant's termination. This reason—the sexual harassment of a subordinate—was the subject of the investigation, was stated in the service letter and was articulated at trial. The theft of cedar posts and the grain spill incidents occurred in 1974 (seven years before the sexual harassment complaint) and MoPac took no disciplinary action against appellant. Evidence of these incidents was offered by MoPac to impeach appellant.

Appellant next argues that the district court erred in stating that the reason offered by MoPac for termination was a good faith belief that plaintiff had sexually harassed an employee under appellant's supervision. Appellant argues that the district court in effect made a preliminary finding that MoPac had a good faith belief and took from the jury the task of deciding if MoPac articulated a legitimate, non-dis-

---

**5.** Although the district court denied MoPac's motion for a directed verdict, the court indicated that appellant had a "very, very weak case" and that appellant had not produced any substantial evidence that the reason for his discharge was pretextual.

criminatory reason. As a result appellant argues that he could not establish pretext.

An employer in an ADEA case must produce evidence that its action was based upon "reasonable factors other than age" or "good cause." 29 U.S.C. § 623(f)(1), (3); *Halsell v. Kimberly Clark Corp.*, 683 F.2d at 291; *Smith v. Farah Manufacturing Co.*, 650 F.2d 64, 67–68 (5th Cir.1981). It is not "enough to offer vague, general averments of good faith—a plaintiff cannot be expected to disprove a defendant's reasons unless they have been articulated with some specificity." *Loeb v. Textron, Inc.*, 600 F.2d at 1012–13 n. 5. The employer, however, "need not persuade the [trier of fact] that the proffered reason in fact justified the discharge because the issue is not whether the reason articulated by the employer warranted the discharge but whether the employer acted for a non-discriminatory reason." *Halsell v. Kimberly Clark Corp.*, 683 F.2d at 291; *see Loeb v. Textron, Inc.*, 600 F.2d 1014.

We have found no cases which specifically address the question whether an employer's "good cause" for discharge in an ADEA case may be based on "good faith" alone. We do not decide this issue because the resolution of the question is not essential to our decision.

The district court's instructions read as a whole in the context of this case are not prejudicially erroneous. MoPac presented substantial evidence that appellant was discharged for reasons other than age and that MoPac's action was not based on "good faith belief" alone. MoPac conducted a rather detailed investigation, prepared a formal investigation report, and sought advice from MoPac's legal staff. MoPac therefore had a reasonable basis for its action. MoPac did not have to prove that appellant in fact sexually harassed an employee.

Appellant next argues that the instruction was erroneous because it was written in the negative, was unbalanced in favor of the defendant, and incorrectly gave the impression that plaintiff's task was an onerous one. We have carefully reviewed the instructions and find these arguments to be without merit.

*Circumstantial Evidence Instruction*

Appellant argues that the district court erred in refusing its proposed jury instruction on circumstantial evidence. Appellant asserts that this instruction was necessary because a key element in appellant's case was the motivation of MoPac, which could only be proven by circumstantial evidence.

Appellant cites no authority and we have found none for the proposition that a court in a civil case must give a circumstantial evidence instruction if requested to do so. *Movible Offshore Co. v. Ousley*, 346 F.2d 870, 874 (5th Cir.1965). The district court instructed the jury that it was to consider all the evidence presented by both parties.[6] The district court did not abuse its discretion in refusing the instruction.

Therefore, the judgment of the district court is affirmed.

---

6. Instructions No. 2 and No. 3 were taken from Vol. 3 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 71.01 (Preponderance of the Evidence), and § 72.01 (Credibility of Evidence) (3d ed. 1977).