**Margaret GILL, Appellant,**

v.

**REORGANIZED SCHOOL DISTRICT R–6, FESTUS, MISSOURI, Appellee.**

#### No. 93–3211.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1994.

Decided Aug. 16, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 7, 1994.\*

---

banc.

John D. Lynn, St. Louis, MO, argued (John D. Lynn and Michael J. Hoare, on the brief), for appellant.

James Thomeczek, St. Louis, MO, argued (James G. Thomeczek and Celynda L. Brasher, on the brief), for appellee.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

FAGG, Circuit Judge.

Margaret Gill brought this race discrimination lawsuit against Reorganized School District R–6, Festus, Missouri (the school district). The district court granted summary judgment for the school district and Gill appeals. We affirm.

Gill retired from full-time teaching after twenty-six years' service in the school district, but continued to teach in the school district as a substitute. After Gill substituted for a seventh grade teacher, a black student complained to his regular teacher that Gill, who is also black, called him a disparaging racial name. The teacher reported the student's complaint to an assistant principal, who served as the school's counselor. The assistant principal investigated the complaint by talking with the complaining student and other students who confirmed the student's complaint, but she did not talk with Gill. When the assistant principal reported the student's accusation to the school district's superintendent, the superintendent stated he would not have a teacher who spoke that way to a student substitute teaching in the school district. Without talking with Gill or the complaining student, the superintendent immediately removed Gill's name from the school district's substitute teacher list. When asked during his deposition whether he "took the word of a student against [Gill]," the superintendent replied that he "took the word of the [assistant principal]" because she had "[t]he responsibility of giving good information to the [s]uperintendent." On appeal,

Gill denies the student's accusation and contends the superintendent discharged her because of her race.

■ Our de novo review of summary judgments in the district court is well established, and we need not repeat the standard of review here. *See Donnelly v. National R.R. Passenger Corp. (Amtrak)*, 16 F.3d 941, 944 (8th Cir.1994) (explaining standard). We apply the standard with caution in employment discrimination cases, however, because intent is inevitably the central issue. *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994); *Keys v. Lutheran Family & Children's Servs.*, 668 F.2d 356, 358 (8th Cir.1981).

■ Because there is no direct or circumstantial evidence of discrimination, Gill recognizes that we should analyze her discrimination claims under the burden-shifting method of proof first described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). Under this method, Gill must first establish a prima facie case of racial discrimination, and if the school district offers a legitimate, non-discriminatory explanation for Gill's discharge, then Gill must show the school district's explanation is merely a pretext for racial discrimination. *Id.; see Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8th Cir.1994). The *McDonnell Douglas* analysis applies equally to Gill's discriminatory discharge claims brought under 42 U.S.C. §§ 2000e to 2000e–17 (Title VII), 42 U.S.C. §§ 1981 and 1983, and the Missouri Human Rights Act, Mo.Rev.Stat. ch. 213 (Supp.1993). *See Richmond v. Board of Regents of Univ. of Minn.*, 957 F.2d 595, 598 (8th Cir.1992); *Missouri Comm'n on Human Rights v. City of Sikeston*, 769 S.W.2d 798, 801–02 (Mo.Ct. App.1989).

■ The district court doubted Gill had satisfied the minimal requirements of a prima facie case for discriminatory discharge because the student's accusation showed Gill did not meet the school district's legitimate expectations for a substitute teacher's performance. *See Crimm v. Missouri Pac. R. Co.*, 750 F.2d 703, 711 (8th Cir.1984) (elements of discriminatory discharge include employee performance meeting employer's legitimate expectations). In analyzing Gill's prima facie case, however, the district court prematurely focused on the alleged misconduct that triggered the adverse employment decision. To establish her prima facie case, Gill was not required to disprove the reason given for her discharge. *See Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 943 (8th Cir. 1994). At the prima facie stage, Gill only needed to prove "that '[she] was doing [her] job well enough to rule out the possibility that [she] was fired for inadequate job performance.'" *Crimm*, 750 F.2d at 711 (citation omitted). Unlike the district court, we believe Gill's denial of the student's accusation coupled with evidence that she had performed satisfactorily as a substitute teacher was sufficient to establish the performance element of her prima facie case. There is no dispute Gill's evidence satisfied the other requirements for a prima face case of discriminatory discharge.

■ We agree with the district court that the school district responded to Gill's prima facie case with a legitimate, nondiscriminatory explanation that Gill was discharged as a substitute teacher because the superintendent believed Gill had called a student an offensive racial name. Gill does not claim that racial name calling would not justify her discharge. Rather, Gill contends the reason given by the school district is unworthy of belief. Thus, we must decide whether Gill produced enough evidence to raise a factual dispute about the honesty of the superintendent's explanation for removing Gill's name from the school district's substitute teacher list; that is, whether the superintendent honestly believed in the reason given for his decision. *See McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir.1992).

Instead of offering evidence to challenge the superintendent's belief that Gill called one of her students a racially derogatory name, Gill's proof centered on whether she was actually guilty of the student's accusation. Although Gill does not deny the assistant principal corroborated the student's accusation and told the superintendent exactly

what the student claimed Gill called him, Gill argues the superintendent "did not possess any reliable evidence on which rationally to base [his] belief" because all the superintendent had before him was the assistant principal's report. Gill contends the superintendent should have talked to her and to the student about the validity of the student's accusation instead of making his decision based on his subordinate's report. Thus, Gill concludes the superintendent's decision had no basis in fact and was nothing more than a coverup for discrimination. We disagree.

We are not concerned with the correctness or wisdom of the reason given for the superintendent's decision, but only "whether [the reported incident] was the real reason for [Gill's] termination and not a pretext for [race] discrimination." *Crimm*, 750 F.2d at 712; see *McCoy*, 957 F.2d at 373. Whether Gill did or did not engage in the conduct reported to the superintendent and whether the superintendent should have relied on the assistant principal's investigation are "irrelevant because [this evidence] merely questions the soundness of the [superintendent's decision]." *Davenport*, 30 F.3d at 944; see *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991). Incorrect thinking on the superintendent's part does not prove the school district's explanation is a pretext. *Kralman v. Illinois Dep't of Veterans' Affairs*, 23 F.3d 150, 157 (7th Cir.1994). We are not permitted to second guess the superintendent or to correct an unwise decision if the superintendent gave an honest, nondiscriminatory explanation for his behavior. *Elrod*, 939 F.2d at 1470.

After a careful review of the summary judgment record, we conclude Gill failed to show the school district's explanation was unworthy of belief. There is nothing in the record to dispute the school district's evidence that there was a factual basis for the assistant principal's report that Gill used a disparaging racial name and the superintendent honestly believed the report was a proper basis for his decision to discharge Gill as a substitute teacher. Contrary to Gill's contention, the mere fact the superintendent knew Gill's race before making his decision is proof of neither pretext nor discriminatory intent. Indeed, in her deposition the only reason Gill gave for her belief the superintendent acted in a discriminatory way toward her was his failure to meet with her before making his decision; otherwise, Gill conceded the superintendent never engaged in conduct that caused her to believe he would discriminate against her because of her race. We thus conclude the district court properly granted summary judgment for the school district.

Finally, we decline Gill's motion to supplement the record. *See Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 988 F.2d 61, 63 (8th Cir.1993) (enlargement of record is rare exception to general rule that court of appeals may consider only the record made before the district court).

Accordingly, we affirm.

HEANEY, Senior Circuit Judge, dissenting.

I agree that Margaret Gill established a prima facie case and that the school district responded with a facially legitimate, nondiscriminatory explanation for her discharge. The critical question that remains is what motivated the superintendent to remove Gill from the list of acceptable substitute teachers. Did he remove her in good faith reliance on Askew's report or because of her race? I agree with the majority that "[w]e are not concerned with the correctness or wisdom of the reason given for the superintendent's decision," but only whether the reported incident was the real reason for Gill's termination or a pretext for racial discrimination. I do not agree, however, with the majority's assertion that whether the superintendent should have investigated the incident is irrelevant to our inquiry. His failure to investigate reflects not only on the soundness of his decision to remove Gill from the list of qualified substitute teachers but also on his motivation in making that decision. If there is evidence in the record from which a factfinder could conclude that the superintendent discharged Gill because of her race, we must remand this matter to the district court for further proceedings.

After a careful review of the record I am convinced that a trier of fact could conclude that the superintendent removed Gill's name from the list of substitute teachers because of her race. If this case went to trial, the factfinder could, of course, agree with the school district's position because clearly there is evidence to support that position. On the other hand, the record also contains evidence that, if construed in the light most favorable to Gill and giving Gill the benefit of all permissible inferences, would permit the factfinder to conclude that the superintendent acted with a discriminatory purpose.

The Festus School District enrolls a significant number of black students. During the school years 1990–91, 1991–92, and 1992–93 there were no black teachers at Festus Middle School. Deposition of John Richeson (Aug. 20, 1992), App. at 246. At the time of her removal, Gill was the only black substitute teacher. *Id.* at 244. Robert Taylor came to the Festus School District as superintendent in 1988 and has continued in that post to the present time. Gill had taught in the senior high school for twenty-six years until her retirement after the 1988–89 school year, and she worked as a substitute teacher in the middle school during the next two school years until she was removed from the list. The middle school principal, John Richeson, considered her his top substitute teacher because regular classroom teachers would often specifically request that Gill teach their classes when they were absent. Deposition of Margaret Gill (Sept. 30, 1992), App. at 225. Richeson, whose sons had been taught by Gill, thought she was a good teacher. Richeson Depo., App. at 234.

Gill's removal was initiated by events that occurred after she had substituted for Angela Farrell at the middle school. The day Farrell returned to her classroom, several students reported that Gill had twice called a student, Marsan Davis, a "nigger." Deposition of Angela Farrell (Sept. 30, 1992), App. at 251. Farrell informed the middle school counselor, Susan Askew, and Principal Richeson. *Id.* at 252. Askew spoke to Davis about the incident, and at least two other boys specifically told Askew they had heard Gill call Davis a "nigger." Deposition of Susan Askew (Aug. 20, 1992), App. at 133–35. Later that day Askew was in the Central Office and mentioned the incident to Terry Coleman, the head of instruction and Askew's direct supervisor as a counselor, who suggested she report the matter to Superintendent Taylor. *Id.* at 138. According to the school district, a short time later Askew and Coleman informed Taylor of the incident but did not tell him the identity of the substitute teacher until after Taylor had decided that the teacher should be removed from the list of substitute teachers. *Id.* at 139; Deposition of Terry Coleman (Sept. 30, 1992), App. at 145; Deposition of Robert Taylor (Sept. 30, 1992), App. at 147. Taylor did not talk to Gill or consult with Principal Richeson before making his decision.

Richeson stated that it was his responsibility to handle complaints about substitute teachers and that he "definitely" intended to give Gill a chance to respond to the accusation against her.[1] Richeson Depo., App. at 236–37, 239. He never had this opportunity, however, because less than a week after the reported incident Richeson was informed that Gill had been removed from the list of substitute teachers. *Id.* at 237.

Gill stated that Superintendent Taylor knew her and therefore knew she was African–American. He once approached her in the middle school library when she was substitute teaching and, calling her by name, asked her how she was doing. Affidavit of Margaret Gill (Feb. 19, 1993), App. at 175. They also attended the same church, where Gill has spoken before the congregation several times. *Id.*

Although the evidence is not strong, I believe it is sufficient to raise an inference of pretext so as to preclude summary judgment. Although Askew, Coleman, and Taylor all stated that Taylor made his decision before knowing the identity of the substitute teacher who had been accused, this evidence is not dispositive. Such testimony is self-serving

---

1. There was only one other incident in which someone had been removed from the list of qualified substitute teachers. Richeson's son had been removed from the list after admitting to Richeson that he threw an eraser at a student. Richeson Depo., App. at 240–41.

for the school district and, though a trier of fact would be free to credit it, the fact that the three school district employees gave a uniform version of the meeting does not end our inquiry into pretext. Superintendent Taylor acted precipitously and on a slim investigatory foundation, did not ask whether anyone had talked to the teacher about the accusation, and failed to consult Principal Richeson, who ordinarily handled such complaints, before terminating this highly regarded substitute teacher with longtime service to the school district. Viewing the evidence as a whole, a trier of fact could conclude that Taylor knew that the accused teacher was Gill and that she was African-American, and that he removed her from the substitute teacher list because of her race. *See Rademaker v. Nebraska*, 906 F.2d 1309, 1312 (8th Cir.1990) (lack of in-depth investigation before termination may support inference that employer's motives were not legitimate). I would reverse the summary judgment and remand this case to the district court for further proceedings.