Bobby L. EMPSON, et al., Respondents,

v.

MISSOURI HIGHWAY & TRANSPOR-
TATION COMMISSION, Appellant.

No. WD 32844.

Missouri Court of Appeals,
Western District.

March 29, 1983.

Bruce A. Ring, Chief Counsel, Jefferson City, Earl H. Schrader, Jr. and James B. Jackson, Asst. Counsel, Missouri Highway & Transp. Com'n, Kansas City, for appellant.

William F. Burns of Burns, Humphrey & Farrington, P.C., Independence, for respondents.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

MANFORD, Judge.

This multi-count action sought damages upon a claim for (1) the unlawful taking of property; (2) two counts of nuisance; and (3) breach of contract. By its verdict-directing instruction, the trial court submitted the case upon the theories of unlawful taking and nuisance. The jury returned its verdict against appellant Missouri Highway and Transportation Commission. The judgment is reversed.

On this appeal, the Missouri Highway and Transportation Commission (hereinafter M.H.T.C.) presents four alleged errors. In summary, it charges that the trial court erred in (1) its submission of the verdict-directing instruction because the instruction did not require a finding of negligence or a finding of agency; (2) failing to sustain the motion of M.H.T.C. to dismiss the claim of breach of contract because there was no evidence of any contract between M.H.T.C. and plaintiffs, nor was there any evidence that Midwest was the agent of M.H.T.C.; (3) refusing to permit a witness for M.H.T.C. to testify to payment of reasonable damages at the time of the taking of the questioned property in condemnation; and (4) refusing to grant M.H.T.C. a new trial because the verdict was excessive as a matter of law.

Because of the particular disposition of this appeal, no discussion is entered relative to points (3) and (4), and it suffices to state that if they were considered, there is real question that the trial court's ruling on those two points was errorless. Points (1) and (2) are discussed conjunctively because they involve consideration of a common or rather the main question. That main question, and the one which is dispositive of this appeal, is: Did there exist an agency relationship between M.H.T.C. and Midwest Pre-Cote Company, thus binding M.H.T.C. to an alleged oral contract with the plaintiffs (Empsons) by and through the acts of an employee for Midwest Pre-Cote? (Midwest)

A summary of the pertinent facts suffices.

On September 13, 1971, M.H.T.C. purchased from Reid and Betty White (plaintiffs-predecessors in title to the land) a tract of land (consisting of 0.43 acres) for a new right-of-way, and a temporary ease-

ment (consisting of 0.77 acres) for draining and filling a pond, along with all abutters rights of direct access to Missouri Highway 7 in Jackson County, Missouri.

In 1975, the Whites (by general warranty deed) conveyed the property to the plaintiffs (Empsons). Through discussion with their relator, the Empsons were made aware of the pending highway improvements. Construction on the highway commenced approximately one year after Empson moved onto the property. On July 7, 1977, Mr. Empson had a conversation with a Frank Walker, General Superintendent for the contractor Midwest Pre-Cote Co. (Midwest).[1] During this conversation, Walker asked Empson for permission to move some dirt from around a utility pole on Empson's property to fill a pond and swamp area which had become part of the highway property. Empson's testimony is decisive to the disposition of this appeal upon the question of agency. The pertinent portion of his testimony reveals:

"Q. Now, in that discussion I believe you indicated there was some kind of a tradeoff, was there not, between yourself and Mr. Walker for the use of the soil on your property?

A. Not at that first time, no, sir.

Q. Well, when did the discussion about the tradeoff take place?

A. When I signed the agreement, sir.

Q. On the date that you signed this Waste Disposal Agreement, Plaintiff's Exhibit 6?

A. Yes, sir.

Q. And what was the tradeoff that you proposed? Can you tell us, in your own words, what was said between you and Mr. Walker?

A. We agreed that since he needed fill dirt over the top of the concrete and stumps and whatever was being put into this low area—he needed dirt, and he told me that he would have to haul it in from other places. I agreed with him that if he would remove this area he could have the dirt—part of it being on my property, I assumed—he could have that dirt if he

would give me a little bit over here, where I could build me a building on it.
* * *

Q. Then what you're describing is that there was a private agreement, so to speak, between yourself and Mr. Walker as to how that would be done?

A. Yes, sir.

Q. Did you ever have any discussion with any representative of the State Highway Commission about the moving of the earth?

A. No, sir."

The testimony of Mrs. Empson, on cross-examination, revealed the following:

"Q. Did you have any contract with the Missouri State Highway Commission?

A. The agreement was made with Mr. Walker, who, *as far as I know, worked for the Highway Commission* and was employed by the Highway Commission." (emphasis added)

On July 7, 1977, a written agreement entitled "Waste Disposal Agreement" was executed by Mr. Empson and Walker. Empson's wife testified that while she did not sign this agreement, she nonetheless joined her husband in its execution.

The work was completed, but the Empsons had complaints which included: (1) a remaining existing mound of dirt in which there was a power utility pole which hampered the view from their front yard; (2) erosion problems which filled a pond on their land and killed their fish; (3) an increase in the size of a ditch running through their property; (4) interference with lateral sewer lines caused by the increased depth and width of the new drainage ditch; (5) erosion around the dirt mound in unseeded areas; (6) unsightly weeds; (7) silting; and (8) difficulties in mowing the area.

The Empsons filed this action, alleging that M.H.T.C. "through its agents, servants, employees, or contractors" altered and increased the drainage area which flowed across their property. They further

1. Midwest Pre-Cote Company was impleaded as a third-party defendant by M.H.T.C.

claimed that this action was an inverse condemnation, a nuisance, and that the mound of dirt left on their property was a nuisance and constituted a breach of contract. Midwest was not joined as a party defendant by the Empsons.

Trial by jury commenced, and at the close of Empson's evidence, M.H.T.C. moved for a directed verdict on the basis that the Empsons had not adduced evidence raising an issue for the jury relative to their oral contract. This motion was overruled. M.H.T.C. also moved to dismiss for failure of the Empsons to adduce evidence sufficient to submit to the jury an issue of negligence against M.H.T.C. The evidence closed. The jury entered an award of $18,-000 in favor of the Empsons and against M.H.T.C. The jury also found in favor of Midwest and against M.H.T.C. on the latter's third-party petition against Midwest. In its motion for new trial, M.H.T.C. challenged as erroneous the trial court's jury instruction upon the issue of agency as between M.H.T.C. and Midwest. The post-trial motion was overruled and this appeal followed.

As noted above, points (1) and (2) presented by M.H.T.C. are discussed and disposed of conjunctively because they raise a common challenge regarding the issue of agency. Under its point (1), M.H.T.C. challenges the verdict-directing instruction, which reads as follows:

"INSTRUCTION NO. 4

Your verdict must be for plaintiffs if you believe:

First, Plaintiffs used their property as a residence, and

Second, defendant, Missouri Highway and Transportation Commission, by its agent acting within the scope and course of agency caused greatly increased amounts and velocities of water, mud and debris to be discharged onto plaintiffs' property, and

Third, this substantially impaired plaintiffs' use of their property, and

Fourth, plaintiffs were thereby damaged.

Acts were within the 'scope and course of agency' as that term is used in this instruction if;

1. They were performed by Midwest Pre-Cote Company to serve the interests of Missouri Highway and Transportation Commission according to an express or implied agreement with Missouri Highway and Transportation Commission, and

2. Missouri Highway and Transportation Commission either controlled or had the right to control the physical conduct of Midwest Pre-Cote Company."

The foregoing instruction is challenged on two bases: (1) it did not require a finding of negligence on the part of M.H.T.C.; and (2) it failed to require a finding that Midwest Pre-Cote was the agent of M.H.T.C. This opinion does not consider the first of these challenges, that is, the instruction's failure to require a finding of negligence, because as observed infra, this entire issue is resolved on the basis of the agency issue.

The second point raised by M.H.T.C. was the trial court's alleged error in its failure to dismiss plaintiff's claim of breach of contract, because as M.H.T.C. contends, there was no evidence of any contract between the plaintiffs and M.H.T.C., nor was there any evidence that Midwest was the agent of M.H.T.C. in any contractual relationship with the plaintiff. Again, this opinion only addresses one issue, i.e., agency, and does not take up the challenge of a lack of contractual relationship as between M.H.T.C. and plaintiff. The reason will become obvious from the discussion below.

Consideration of these two points, or more accurately, portions of both conjunctively, produces two questions (which really bear upon a single issue, to wit, agency) which in turn, upon deriving the answers, is dispositive of this appeal. The questions which arise and thus which must be answered are: Was Frank Walker, as an employee of Midwest Pre-Cote, an agent for M.H.T.C. as to bind M.H.T.C. to the alleged oral contract with the Empsons? and (2) Was there a master-servant relationship estab-

lished between M.H.T.C. and Midwest Pre-Cote so that the alleged negligence of the servant (i.e., Midwest) could be imputed to the master (i.e., M.H.T.C.)?

First, concerning the relationship of master/servant or agency, it is important to note some applicable principles against which the particular facts and circumstances of the instant case can be weighed. Our courts have held that the relationship of master/servant is created by manifestation of consent by one person to another that the other shall act on his or her behalf, subject to his control and the consent by the other so to act. *Utlaut v. Glick Real Estate Co.,* 246 S.W.2d 760, 763 (Mo.1952).

Principal and agent has more succinctly been described as the existing legal relationship where one person is authorized (usually by an act or acts of the parties) to represent or act for another in contractual dealings of the latter with a third party. *Prior v. Hager,* 440 S.W.2d 167, 173 (Mo. App.1969). This relationship does not arise solely from some prescribed particular mode or method and it suffices that such relationship will be recognized when and if, from credible facts taken as a whole, those facts fairly disclose that a party is acting for or representing another by and subject to the latter's authority. *Smoot v. Marks,* 564 S.W.2d 231, 236 (Mo.App.1978).

It is important to note the mere characterization of one party (in a contract) as an independent contractor is not controlling on the question of agency where surrounding facts evince an agency relationship, however artfully disguised. *Northern v. McGraw-Edison Co.,* 542 F.2d 1336, 1343 (8th Cir.1976), cert. denied, *McGraw-Edison Co. v. Soper,* 429 U.S. 1097, 97 S.Ct. 1115, 51 L.Ed.2d 544 (1977), rehearing denied 430 U.S. 960, 97 S.Ct. 1612, 51 L.Ed.2d 812 (1977). Normally, the relationship of principal and agent is a fact question left to the trier of fact, *Jordan v. Robert Half Personnel Agencies of Kansas City, Inc.,* 615 S.W.2d 574 (Mo.App.1981), but our law permits no indulgence to presume an existing agency, and the burden of establishing its existence is on the party alleging the existence of the agency. *Dickey Co., Inc. v. Kanan,* 537 S.W.2d 430, 434 (Mo.App.1976).

M.H.T.C. first contends that it could not be held liable for the acts of Midwest in the latter's agreement with the Empsons because Midwest was an independent contractor on the Highway 7 project. In considering this argument, it is useful to refer to descriptive language provided by our state Supreme Court in *Barnes v. Real Silk Hosiery Mills,* 341 Mo. 563, 108 S.W.2d 58, 61 (1937) and *Skidmore v. Haggard, et al.,* 341 Mo. 837, 110 S.W.2d 726, 729–30 (1937):

"A master is a principal who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service.

"A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.

"An independent contractor is a person who contracts with another to do something for him, but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking."

As regards the evidence herein, the construction contract between M.H.T.C. and Midwest admitted as a defense exhibit clearly designates Midwest as an independent contractor. Additionally, the Waste Disposal Agreement, admitted as a plaintiff's exhibit, fails to denote any agency between M.H.T.C. and Midwest. The documentary evidence upon this record fails to support any agency relationship between M.H.T.C. and Midwest.

The Empsons contend, however, that even if there is a paucity of documentary evidence, the testimony of the resident engineer for M.H.T.C. (Clark) shows that the Waste Disposal Agreement form was provided by M.H.T.C. and that Clark made daily inspections of the highway construction project. The Empsons further note

that Clark's testimony reveals that Walker (from Midwest) requested Clark to allow the removal of dirt from the right-of-way limits and to deposit it on another man's property outside the right-of-way limits. Finally, the Empsons point to the general testimony of Clark that the highway project was done in substantial compliance with the contract between M.H.T.C. and Midwest and that Clark, as resident engineer, worked hand-in-hand with Midwest on all changes and ultimately gave his approval of the entire job.

From this, the Empsons urge that the status of Midwest as an independent contractor was vitiated by the use of the Waste Disposal Agreement form supplied by M.H.T.C. The Empsons add a further contention that the agreement between them and Midwest benefitted both M.H.T.C. and Midwest in that they were required to fill and cap "a swamp area and that the removal of the dirt from their (Empson's) land" saved them (M.H.T.C.) the expense of providing other material and the hauling of that material to the site from other locations. In sum, the Empsons urge that the totality of the circumstances created an agency between M.H.T.C. and Midwest for purposes of the Waste Disposal Agreement between them (Empsons) and Midwest. The Empsons cite to the court *Schimmel Fur Co., Inc. v. American Indemnity Co.,* 440 S.W.2d 932 (Mo.1969) and *First National Bank of Carthage v. Mutual Benefit Life Ins. Co.,* 145 Mo. 127, 46 S.W. 615 (1898) as controlling. This court cannot agree that cited authority controls.

From the evidence upon this record, the following conclusions are derived, which dispel the contention of an existing agency. The highway project contract between M.H.T.C. and Midwest clearly designates Midwest as an independent contractor. The waste disposal agreement form discloses no intent to negate the status of Midwest as an independent contractor.

Further consideration rests upon the determination of *whether the work performed by Midwest was done under the control of M.H.T.C. or under its right to control the* *means and manner of construction, as distinguished from control of the ultimate result.* See *Steele v. Armour & Co.,* 583 F.2d 393, 398 (8th Cir.1978). To this question, our courts have held that where a general contractor was charged with control over work to see that it was accomplished according to plan and that such contractor had no control over the excavating contractor's employees, their payment or method of excavating, the fact that the general contractor exercised a certain measure of supervisory control over the total project would not invoke the doctrine of respondeat superior for the subcontractor's acts or omissions. *Southwestern Bell Tel. Co. v. Rawlings Mfg. Co.,* 359 S.W.2d 393, 399 (Mo.App.1962) and *Jeff-Cole Quarries, Inc. v. Bell,* 454 S.W.2d 5, 13–14 (Mo.1970). Under the facts and circumstances of the instant case, the respective positions of M.H.T.C. and Midwest fit precisely within the foregoing description of the relative positions of a general contractor and subcontractor.

As a collateral argument, the Empsons contend that an agency between M.H.T.C. and Midwest was established under the doctrine of apparent authority. It is axiomatic in our law that apparent agency, or as it is sometimes called, agency by estoppel, requires a manifestation or an appearance of authority created either by acts of acquiescence of or by the purported principal. *Springfield Television, Inc. v. Gary,* 628 S.W.2d 398, 403 (Mo.App.1982). While the testimony of an agent may be competent to establish his agency, neither the fact of his employment nor his representations are by themselves sufficient to establish the scope of his authority. *Cameron Mutual Ins. Co. of Missouri v. Bouse,* 635 S.W.2d 488, 491 (Mo.App.1982); *Springfield Television, supra;* and *Erickson v. Civic Plaza National Bank of Kansas City,* 422 S.W.2d 373, 380 (Mo.App.1967).

With the foregoing principles in mind, attention is again directed to the evidence herein. There is no discernible evidence that the Waste Disposal Agreement was anything but a private agreement

exclusively between the Empsons and Midwest. The Empsons attempt to persuade the conclusion that since the agreement between them and Midwest was drawn on a form provided by M.H.T.C., that M.H.T.C. became a party to the agreement. An agency relationship cannot be implied from the mere possession of letterheads, billheads, or forms by a purported agent. *Dudley v. Dumont,* 526 S.W.2d 839, 845 (Mo.App.1975). There is absolutely no evidence that M.H.T.C. held either Walker or Midwest out as its agent or that M.H.T.C. knew or had reason to know that Walker and/or Midwest conducted themselves as the agent of M.H.T.C.

The record further discloses that the Empsons and Walker agreed to a "trade off" whereby Walker would remove a large mound of dirt from Empson's front yard and use part of it to fill swamp area and the remainder to fill an area where Empson desired (and later did so) to erect a building. The area for the building site needed leveling. In his testimony, Empson admitted that the agreement was a private agreement with Walker and that he never discussed moving the earth "with any representative of the State Highway Commission" Clark of M.H.T.C. testified that he had no contact with the Empsons. There is nothing upon the record which shows that Walker represented either himself or Midwest to be the agent of M.H.T.C. to the agreement. There is no evidence to show that M.H.T.C. had the right to control or did control the means or manner of Midwest's or Walker's construction duties. The record herein is wanting of sufficient evidence to permit a finding of liability against M.H.T.C. on either the doctrine of respondeat superior or apparent authority.

On a final note, it is urged by the Empsons that liability against M.H.T.C. could be predicated upon a theory of ratification of all the work done by Midwest. Ratification relative to the question of agency has been defined as the express or implied adoption or confirmation by a person of an act performed in his behalf by another who at the time assumed to act as his agent but lacked authority to do so. *Centennial State Bank v. S.E.K. Const. Co., Inc.,* 518 S.W.2d 143, 148 (Mo.App.1974). The burden of proof of ratification rested with the Empsons. *Niehaus v. Mitchell,* 417 S.W.2d 509 (Mo.App.1967). The first essential element in meeting this burden (and is found totally lacking under the evidence herein) is the showing that the principal alleged to have ratified the acts of an agent had full knowledge of all material facts at the time he was charged with having accepted the transaction as his own. *Dudley,* 526 S.W.2d at 848. The Empsons have failed, under their evidence, to meet this initial burden.

As an added note, there is no direct evidence or evidence from which it could be inferred that the use of the particular earth, in lieu of acquiring and hauling earth from another source, was a saving benefit to M.H.T.C. The contract between M.H.T.C. and Midwest provided for filling a swamp area. The obligation to pay for that portion of the contract by M.H.T.C. remained regardless of the source of the earth. That Midwest benefitted from the ready earth source and was thus relieved from having to haul earth from another source cannot, in the absence of evidence revealing the contrary, be construed to have been a "saving" or "benefit" to M.H.T.C.

The evidence upon this record reveals that there is no liability which inured to M.H.T.C. because the evidence simply fails to establish that Midwest was the agent of M.H.T.C., particularly in regard to the Waste Disposal Agreement with the Empsons under any theory of agency. It follows that the Empson's claims of inverse condemnation, nuisance and breach of contract against M.H.T.C. must all be denied. The trial court erred in its failure to so rule at the time of trial.

The judgment herein is in all respects reversed. The cause is not remanded because it is found upon the record that the Empsons failed to make a submissible case against M.H.T.C. Consideration has been given in the light most favorable to the Empsons' evidence and all reasonable infer-

ences to be drawn therefrom as required. *Martin v. Brune,* 631 S.W.2d 77 (Mo.App. 1982). Upon reaching this result, this court is empowered to rule the judgment reversed without a remand to spare the parties the burden of another trial. *Gray v. Koplar-Barron Realty Co.,* 497 S.W.2d 185, 187 (Mo. App.1973).

Points (1) and (2) presented by M.H.T.C., for the reasons set forth herein, are sustained to the favor of M.H.T.C.

The judgment is reversed.

All concur.