FEDERAL ENTERPRISES, INC., a Missouri Corporation; Douglas S. Evans, Trustee in Bankruptcy, Appellants,

v.

GREYHOUND LEASING & FINANCIAL CORPORATION, Appellee.

No. 87–1117.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1987.

Decided June 2, 1988.

Rehearing and Rehearing En Banc Denied July 25, 1988.

Christopher J. Stark, Springfield, Mo., for appellants.

John R. Lewis, Springfield, Mo., for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

HEANEY, Circuit Judge.

This is an appeal from a judgment entered in accordance with a jury verdict obtained after retrial on remand from this Court. We affirm.

I. Background

The facts underlying the instant dispute are fully set forth in this Court's original opinion, *Federal Enterprises, Inc. v. Greyhound Leasing & Financial Corp.*, 786 F.2d 817 (8th Cir.1986), and will only be repeated to the extent here relevant. The case involves a transaction whereby Federal Enterprises, Inc. (Federal) was to sell certain coal processing equipment to Grey-

hound Leasing & Financial Corporation (Greyhound) which was to lease the equipment to Blue Eagle, Inc. (Blue Eagle).

Representing both Federal and Blue Eagle in the transaction was Nathaniel P. Gunn. Gunn's role in the transaction is disputed by the parties. At the time of the transaction, Gunn owned one-third of the outstanding stock of Federal, was its President, and was in control of its day to day operations. In addition, Gunn was the President and sole shareholder of Blue Eagle.

Originally Gunn dealt with James Brown, an employee of Greyhound. Gunn provided Brown with background and business information in his capacity as the President of Federal. Thereafter, on Brown's recommendation, Greyhound's credit committee approved the proposed transaction provided several conditions were met. First, Blue Eagle was to obtain a letter of credit for one-fourth ($204,250) of the $817,000 purchase price to secure performance of its obligations under the lease. Second, Federal was to agree to repurchase the equipment from Greyhound if Blue Eagle defaulted on its lease obligations. Third, Gunn and his wife were to personally guarantee payment of one-fourth of the purchase price.

Subsequently, a meeting was held to close the transaction. The meeting was attended by Gunn, Donald Boutot, an employee of Federal, and John Greene, an attorney and employee of Greyhound. At the closing, however, the transaction did not proceed as contemplated. Contrary to the earlier understanding, Blue Eagle failed to provide Greyhound with an acceptable letter of credit. Instead, Gunn proposed that Greyhound pay Federal $612,750 and place the balance of the purchase price ($204,250) in a savings and loan account. It appears that the $204,250 was to remain in the account pending full performance by Blue Eagle.[1] Greyhound agreed to the proposal and received a "receipt" from Gunn reflecting payments according to it.[2]

In late August, Federal notified Greyhound that it had not received one-fourth of the agreed purchase price. Greyhound responded that it had fully complied with the directions for payment set forth in Gunn's proposal. Several months later, Federal brought suit against Greyhound seeking to recover one-fourth of the agreed purchase price.[3] The case was tried to a jury which returned a verdict in favor of Greyhound. Federal moved the district court for a new trial arguing that the jury instructions were improper and that the court erred in admitting certain evidence. The district court denied the motion.

Federal then appealed to this Court raising the same arguments as were raised in connection with the post-trial motion. This Court reversed the district court, concluding that the jury instructions were inadequate in a number of respects. These included the failure of the instructions to define key terms such as "appearance of authority," their failure to set forth Grey-

---

1. There is a dispute as to how the money in the account was to be distributed upon full performance by Blue Eagle. Gunn, apparently claimed that Blue Eagle had already paid $204,250 to Federal as part of the purchase price of the equipment. Following from this, it could be assumed that Greyhound would be entitled to the funds as a "deposit" from Blue Eagle on the lease. Our prior opinion recognized the implausibility of Gunn's claim, since the transaction was structured such that Greyhound would purchase the equipment and lease it to Blue Eagle.

2. The receipt, admitted in evidence over the objections of the appellants as defendant's exhibit A, states:

Gentleman:
As reimbursement to Lessee, you are hereby instructed to apply a portion of the purchase price in the sum of $204,250.00 to the Security Deposit required to be supplied to you by Lessee pursuant to the Lease.

Together with the lessor's check drawn to Federal Enterprises, Inc. in the amount of $612,750.00, receipt of which is hereby acknowledged, such reimbursement shall constitute payment of the purchase price (i.e., $817,000.00) to Vendor in full.

Very truly yours,

FEDERAL ENTERPRISES, INC.
By: /s/ Nathaniel Gunn, Pres.

3. In a separate proceeding, Federal was adjudicated involuntarily bankrupt. Thereafter, Douglas S. Evans, trustee for the bankrupt's estate, was added as a plaintiff. *See Federal Enterprises, Inc. v. Greyhound Leasing & Financial Corp.*, 786 F.2d at 819. For purposes of simplicity, we shall use the term Federal to include both Federal and the trustee.

hound's duty to ascertain Gunn's authority to act as Federal's agent, and their failure to inform the jury that it was for them to decide whether Gunn, in specifying the manner of payment, was acting as the agent of Federal and within the scope of his actual or apparent authority.[4] *Federal Enterprises, Inc. v. Greyhound Leasing & Financial Corp.*, 786 F.2d at 820–21.

In remanding the case for a new trial, this Court offered the district court several guidelines. We stated:

> On remand, the jury instructions should be so formulated, if the evidence at trial again warrants, to: (1) allocate clearly the burden of proof of agency; (2) define key legal terms such as "agent" and "apparent authority", and (3) clarify Greyhound's duty to inquire into Gunn's authority and the representations he made where Greyhound knew that Gunn, purporting to act in a dual capacity, was in a position of divided loyalty.

*Id.* at 812.

On remand, the case was tried to a jury which again found in favor of Greyhound. On December 10, 1986, the district court entered judgment in accordance with the verdict. Thereafter, Federal filed motions for a new trial and for judgment notwithstanding the verdict. On January 13, 1987, the district court denied the motions. Federal appeals on the grounds that the jury instructions at the trial on remand were improper and that certain evidence was erroneously admitted.

## II. Analysis

In reviewing jury instructions, this Court must determine whether, as a whole, they state the governing law fairly and correctly. *See, e.g., Crimm v. Missouri Pacific R. Co.*, 750 F.2d 703, 711 (8th Cir.1984). We will not find error in instructions simply because they are technically imperfect or are not a model of clarity. *Id.* (citing *Tribble v. Westinghouse*, 669 F.2d 1193, 1197 (8th Cir.1982), *cert. denied*, 460 U.S. 1080, 103 S.Ct. 1767, 76 L.Ed.2d 342 (1983)). Rather, the district court has broad discretion in formulating the language of the jury instructions and will not be overturned on appeal so long as the instructions given are accurate and fair to both parties. *Villanueva v. Leininger*, 707 F.2d 1007, 1009 (8th Cir.1983).

■ Federal contends that the instructions were defective in a number of respects. First, it argues that they fail to properly place the burden of proving agency on Greyhound. *See, e.g., Houston v. Groth Enterprises, Inc.*, 670 S.W.2d 178, 180 (Mo.Ct.App.1984) (party relying on authority of agent has the burden of proving both the fact and scope of the agency). We disagree.

Although no single instruction placed the burden of proving the existence and scope of Gunn's agency on Greyhound, read in their entirety, the instructions clearly do so. Instruction number 4 states in part:

> The burden of causing you to believe a proposition of fact is upon the party whose claim or defense depends upon that proposition. In determining whether or not you believe any such proposition, you must consider only the evidence and the reasonable inferences derived from the evidence. If the evidence in the

---

4. Federal objected most strenuously in the first appeal to instruction numbers 6 and 7. Instruction number 6 read:

> Your verdict must be for defendant if you believe:
> 1. Federal Enterprises, Inc. created the appearance of authority of Nathaniel Gunn to act on its behalf in closing the transaction with defendant; and
> 2. Defendant relied upon such appearance of authority to close the transaction with plaintiff and in so relying, defendant was using ordinary care; and

3. Nathaniel Gunn signed the letter dated July 9, 1980, [defendant's exhibit A set forth *supra* n. 2] in which he gave directions for the payment of the purchase price; and
4. Defendant made the payments in full pursuant to said letter of instruction.

> The phrase "ordinary care" as used in this instruction means that degree of care that would be reasonable in defendant's situation.

Instruction number 7 read:

> Your verdict must be for defendant unless you believe Federal Enterprises, Inc. failed to receive the full purchase price of the coal washing equipment.

case does not cause you to believe a particular proposition submitted, then you cannot return a verdict requiring belief of that proposition.

In addition, instruction number 5 states:

Your verdict must be for plaintiff if you believe:

First, at defendant's request plaintiff furnished to Blue Eagle Company certain coal washing equipment between June 16, 1980 and August 14, 1980, and

Second, plaintiff charged a total of $817,000.00 for such goods.

Unless you believe plaintiff is not entitled to recover by reason of Instruction No. 7.

Instruction number 7 states:

Your verdict must be for the defendant if you believe that Nathaniel Gunn signed and delivered defendant's exhibit "A" directing defendant to pay $204,-250.00 to First Federal Savings and Loan Association while acting within the scope and course of his agency with the plaintiff.

Acts were within the "scope and course of agency" as that phrase is used in this instruction if:

1. Nathaniel Gunn had actual authority from the plaintiff to act on plaintiff's behalf, or

2. Plaintiff created the appearance of authority of Nathaniel Gunn to act upon its behalf in closing the transaction with defendant and defendant relied upon such appearance of authority to close such transaction using reasonable prudence in so doing, or

3. Plaintiff ratified the act of Nathaniel Gunn by failing to return the $612,-750.00 after having notice of the acts of Nathaniel Gun.

The term "appearance of authority" as used in this instruction exists where the plaintiff has created such an appearance of things that it causes defendant to reasonably and prudently believe that Nathaniel Gunn had the power to act on behalf of plaintiff.

Taken as a whole, instructions 4, 5 and 7 place the burden of proving agency on Greyhound, and in point of fact, directed a verdict in favor of Federal if that burden was not met. Accordingly, we find that the jury instructions, while not a model of clarity, properly place the burden of proving agency on Greyhound.

■ Second, Federal contends that the instructions did not inform the jury that it was to decide whether Gunn was acting as an agent of Federal and within the scope of that agency when he directed Greyhound to place a portion of the purchase price in the savings and loan account. Instructions 4 and 7 set forth above, however, are clear that the jury was to determine whether Gunn was acting "within the scope and course of his agency with [Federal]" when he signed exhibit "A", directing payment. Therefore, we reject Federal's contention that the instructions were erroneous in this respect.

■ Third, Federal contends that the instructions did not accurately define the "scope and course" of Gunn's agency. We disagree. Instruction number 7 allowed the jury to find Gunn's acts within the scope and course of his agency if Gunn had actual or apparent authority to act for Federal or if Federal ratified Gunn's acts.[5]

5. Federal objects to the inclusion of the instruction on ratification. "[R]atification is an express or implied adoption or confirmation, with knowledge of all material matters by one person of an act performed in his behalf by another who at that time assumed to act as his agent but lacked authority to do so." *Hyken v. Travelers Insurance Co.,* 678 S.W.2d 454, 459 (Mo.Ct.App. 1984) (quoting *Dudley v. DuMont,* 526 S.W.2d 839, 847 (Mo.Ct.App.1975)). Moreover, under Missouri law, where an agency exists but the agent may have acted in excess of its authority, "the facts will be liberally construed in favor or ratification by the principal, and very slight circumstances will often suffice to raise the presumption or justify the inference of ratification." *Compton v. Vaughan,* 222 S.W.2d 81, 83 (Mo.1949).

Federal argues that the defense of ratification was not sufficiently raised in the pleadings. We disagree. Rule 8 of the Federal Rules of Civil Procedure abolishes technical forms of pleading and requires the pleadings to be so construed as to do substantial justice. In this light, the pleadings were sufficient to raise the issue of ratification.

Federal also argues that the evidence at trial was insufficient to support the ratification in-

Preliminary instruction number 8 defines agency as follows:

> Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf, and subject to his control, and consent by the other so to act.

It appears that the instruction is taken directly from the Missouri case of *Leidy v. Taliaferro*, 260 S.W.2d 504, 505 (Mo.1953) (citing Restatement of Agency § 1), and accurately states the law with respect to agency. *See, e.g., Dudley*, 526 S.W.2d at 844 (requiring proof of agreement authorizing one to act for another).

■ Applying the agency definition, instruction number 7 allows the jury to find that Gunn was acting within the scope and course of his agency with Federal if he had "actual authority" to act on Federal's behalf in directing payment. The term "actual authority" is not defined in the instructions. Yet, the lack of a definition is not prejudicial to Federal. Under Missouri law, actual authority may be either express or implied. *See Dudley*, 526 S.W.2d at 844. In contrast, the ordinary understanding of the term "actual" could include only authority that is expressly conferred. Thus, if there was any defect in the instruction concerning actual authority, it was not prejudicial to Federal.

With respect to apparent authority, instruction number 7 defines it as follows:

> The term "appearance of authority" as used in this instruction exists where the plaintiff has created such an appearance of things that it causes defendant to reasonably and prudently believe that

Nathaniel Gunn has the power to act on behalf of plaintiff.

Federal contends that the instruction does not correctly set forth Greyhound's duty of care in this case. Specifically, Federal contends that the instruction should have indicated that Gunn was acting in a dual capacity and that this fact required Greyhound to exercise a heightened standard of care in dealing with him. In support of its contention Federal cites to cases setting forth the general rule in Missouri that, "a third person dealing with an agent * * * has the duty of ascertaining * * * agent's authority." *Erickson v. Civic Plaza National Bank of Kansas City*, 422 S.W.2d 373, 380 (Mo.Ct.App.1967). Further, Federal contends that such duty extends to determining "(1) that the alleged agent is really such, (2) that he is an agent of the sort he purports to be * * * and (3) that the act done is within the limits of his authority." *Id.* (citing Mechem, The Law of Agency, Book II, § 745 p. 528).

■ Yet Missouri law does not require actual inquiry in every case. Rather, the inquiry required under Missouri law is that which "a person of ordinary prudence, conversant with business usages and the nature of the particular business" would make. *Erickson*, 422 S.W.2d at 380 (quoting *Koewing v. Greene County Building & Loan Ass'n of Springfield*, 38 S.W.2d 40, 43 (1931)). To hold otherwise and to impose a duty of actual inquiry in every case would essentially eliminate the doctrine of apparent authority that has been accepted in Missouri and render meaningless the standard of care imposed upon third parties under the doctrine.

Accepting Federal's contentions as to the applicable law, we find that the evidence at trial was sufficient to support the ratification instruction. It is undisputed that Gunn was an agent of Federal. Therefore, "very slight circumstances" would suffice to justify the inference that Federal ratified his acts. Given the facts of this case, we cannot say the district court erred in allowing the jury to determine whether such circumstances existed.

struction. Federal contends that in order to have ratified Gunn's actions, it had to have actual knowledge of all of the material facts surrounding the transaction at the time it was charged with having ratified the transaction by retaining the benefits of it. *See, e.g., Empson v. Missouri Highway & Transportation Commission*, 649 S.W.2d 517, 523 (Mo.Ct.App.1983); *Dudley v. Dumont*, 526 S.W.2d 839, 848 (Mo.Ct. App.1975). Moreover, Federal argues that Gunn's knowledge may not be attributed to it for purposes of determining whether Gunn's actions were ratified.

Moreover, under Missouri law, a party dealing with one known to be acting in a dual capacity is not held to any greater standard of care (such as a requirement that the third-party make an actual inquiry into the purported agent's authority). Certainly, the fact that an agent is known to be acting in a dual capacity may well affect the type of inquiry that would be undertaken by a person of reasonable prudence. Yet, the reasonableness of the third party's inquiry is for the jury to determine in light of their collective experience. Like the district court, we refuse to extend Missouri agency law to require actual inquiry into the authority of an agent whenever it is known that the agent is acting in a dual capacity.

Applying these principles, the district court did not err in instructing the jury that apparent authority "exists where the plaintiff has created such an appearance of things that it causes defendant to reasonably and prudently believe that Nathaniel Gunn has the power to act on behalf of plaintiff." *See* Instruction number 7. The instruction properly set forth the standard of care against which Greyhound's actions were to be measured. Federal was free to argue to the jury that Greyhound's actions in dealing with Gunn were not reasonable or prudent, and the jury remained free, in light of their collective experience, to accept or reject the argument. Thus, we find no error in the jury instructions.

We have considered the other issues raised by Federal and find them to be without merit. Accordingly, we affirm.