39 F.Supp.2d 1186 (1999)
Ralph A. WOEPKE, et ux., Plaintiffs,
v.
FEDERAL KEMPER LIFE ASSURANCE COMPANY, Defendant.
No. 4:98CV486DDN.
United States District Court, E.D. Missouri, Eastern Division.
February 18, 1999.
*1187 James O'Herin, Florissant, MO, for plaintiffs.
Clark H. Cole, Karen A. Baudendistel, Armstrong Teasdale, LLP, St. Louis, MO, for defendant.

MEMORANDUM
NOCE, United States Magistrate Judge.
This action is before the Court upon the motion of defendant Federal Kemper Life Assurance Company for summary judgment (Doc. No. 18). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c). A hearing was held on the motion on January 19, 1999.
Plaintiffs Ralph A. Woepke and Audrey M. Woepke, his wife, commenced this action in the Circuit Court of the City of St. Louis whence it was removed to this Court. In their complaint plaintiffs allege that defendant Federal Kemper Life Assurance Company is liable on agency, negligence, and gross negligence principles for the misappropriation of their investment funds by Robert Gibson.
This Court must grant summary judgment if the pleadings, admissions, stipulations, depositions and affidavits demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Board of Educ., Island Trees Union Free School Dist. No. 26 v. Pico, 457 U.S. 853, 863, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982). The moving party must initially demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. Any doubt as to the existence of a material fact must be resolved in favor of the party opposing the motion. Pico, 457 U.S. at 863, 102 S.Ct. 2799.
Once a motion is properly made and supported, the non-moving party may not rest upon the allegations in the pleadings but must instead set forth admissible evidence of specific facts showing that there is a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e); Buford v. Tremayne, 747 F.2d 445, 447 (8th Cir.1984).

*1188 Factual Record.

The record of this action indicates that the following material facts are without genuine dispute:
1. As early as 1980 Robert Gibson was employed by Federal Kemper Life Assurance Company (Federal Kemper) as a general agent. By written General Agent's Agreements he was authorized by Federal Kemper to, among other things, solicit applications for life policies and annuity contracts, to collect initial premiums, to forward the premiums to Federal Kemper, and to deliver policies and contracts issued by Federal Kemper. See Def.Exhs. 1 and 2; filed January 28, 1999.
2. Ralph A. Woepke became acquainted with Gibson in 1980 when Gibson serviced an automobile insurance policy issued by a Kemper insurance company.
3. In August 1982, the Woepkes each purchased a separate annuity from Federal Kemper. See Def. Motion Exhs. 1 and 2, filed December 29, 1998. In June 1982 the Woepkes purchased a Federal Kemper insurance police through Gibson. They contributed to the annuities until 1987, when they became sufficiently dissatisfied with the Federal Kemper annuities that they stopped contributing and purchased annuities from Dean Witter. See Def. Motion Exh. 6, at pp. 52-54, filed December 29, 1998.
4. During the late 1980's the Woepkes had difficulty reaching Gibson to discuss their investments. See Def. Motion Exh. 7, at p. 15, filed December 29, 1998. By October 1989, Gibson's office telephone number was discontinued. See Def. Motion Exh. 9, filed December 29, 1998.
5. On December 1, 1989, Federal Kemper terminated Gibson as an agent, because of his lack of production. See Def. Motion Exh. 3, filed December 29, 1998. When it terminated Gibson, it was unaware of any illegal or inappropriate activities of Gibson. Id.
6. In late 1990, Gibson contacted the Woepkes and suggested they surrender their Federal Kemper annuities and reinvest the proceeds with a different company. See Def. Motion Exh. 6, at pp. 28-30, filed December 29, 1998; see Def. Motion Exh. 7, at pp. 15-16, filed December 29, 1998. At this time, the Woepkes did not make any inquiry about the status of Gibson with either Federal Kemper or the State of Missouri.
7. On September 5, 1990, on a Federal Kemper form presented by Gibson, Ralph Woepke signed an application for the surrender value proceeds of his Federal Kemper annuity. See Def. Motion Exh. 4, Exh. 6, at p. 25, filed December 29, 1998. When Woekpe signed the form, the payee and address spaces on the form were blank; nevertheless, Woepke signed the form. When he did this, Ralph Woepke intended that this money be sent by Federal Kemper directly to Gibson. See Def. Motion Exh. 7, at 15-16, filed December 29, 1998. He then believed that Gibson would reinvest this money in another financial product, the identity of which was then unknown to Woepke. Thereafter, Gibson filled in the blanks to direct Federal Kemper to issue a check for the surrender value proceeds to Gibson's business, Arpy's Financial Services, at 8231 Olive Street Road, St. Louis, Missouri. See Def. Motion Exh. 4, filed December 29, 1998.
8. On September 7, 1990, Federal Kemper complied with the application form signed by Ralph Woepke and filled in by Gibson. It issued its check to Arpy's Financial Services for $7,155.57, the full amount owed to Ralph Woepke on his annuity. See Def. Motion Exh. 3, filed December 29, 1998.
9. On November 20, 1990, at her husband's direction, on a blank Federal Kemper form Audrey Woepke signed an application for the surrender value proceeds of her Federal Kemper annuity. See Def. Motion Exh. 5, Exh. 7, at p. 23, filed December 29, 1998. Her husband, Ralph Woepke, then forwarded the form to Gibson. Gibson filled in the payee and address *1189 spaces on the form to direct Federal Kemper to issue a check for the surrender value proceeds to Gibson's business, Arpy's Financial Services at 8231 Olive Street Road, St. Louis, Missouri. See Def. Motion Exh. 5, filed December 29, 1998.
10. On December 6, 1990, Federal Kemper issued its check for $12,616.20, the full amount owed to Audrey Woepke on her Federal Kemper annuity. See Def. Motion Exh. 3, filed December 29, 1998. The payee on the check was Audrey M. Woepke. Thereafter, the check was falsely endorsed on the back with her name.
11. Between January and March 1991 the Woepkes tried to contact Gibson to ask about the status of their investments. Not until April 1991 did the Woepkes enquire of Federal Kemper about Gibson and their money. By then Gibson had taken and appropriated to his own use the Woepkes' annuity surrender value checks issued by Federal Kemper.

Discussion.
The Court has subject matter jurisdiction over this action. It is undisputed that plaintiffs are both citizens of Missouri and that defendant is incorporated under the law of Illinois and has its principal place of business in that state. Therefore, the Court has jurisdiction under 28 U.S.C. § 1332.
In an action founded upon diversity jurisdiction, this Court must apply the substantive rules of decision which the Missouri state courts would apply. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Birnstill v. Home Savings of America, 907 F.2d 795, 797 (8th Cir.1990). Missouri courts, of course, follow the principal contacts-most significant relationship rule of § 145 of the Restatement (Second) on Conflicts of Law. Kennedy v. Dixon, 439 S.W.2d 173, 184 (Mo.1969) (en banc); Roy v. Landers, 467 S.W.2d 924, 925 (Mo.1971); Dunaway v. Fellous, 842 S.W.2d 166, 168 (Mo.Ct.App.1992); see also Moses v. Union Pacific Rr., 64 F.3d 413, 418 (8th Cir.1995).
In applying the Missouri choice of law rule, this Court must consider the following specific Restatement factors:
(a) the place where the injury occurred;
(b) the place where the conduct causing the injury occurred;
(c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and
(d) the place where the relationship, if any, between the parties is centered.
Dunaway, 842 S.W.2d at 168. From the undisputed facts, it appears that Missouri has the most significant contacts with the dispute. Plaintiffs are citizens of Missouri and Federal Kemper, through Gibson and his St. Louis County office, conducted its business with the plaintiffs in Missouri. Therefore, the Court will look to the law of Missouri for its rules of decision in this case.
Defendant argues on the Count III negligence claim[1] that the undisputed facts establish that it violated no duty to the plaintiffs by reason of Gibson's misappropriation of their money. In this regard it is incumbent upon the plaintiffs to proffer substantial evidence of ultimate fact or facts: (1) from which the law imposes on defendant the duty to protect plaintiffs from the actions of Gibson, (2) which indicate that defendant failed to perform that duty, and (3) which indicate that defendant's failure to perform that duty caused the plaintiffs' injury. Krause v. U.S. Truck Co., 787 S.W.2d 708, 710 (Mo.1990) (en banc); Karnes v. Ray, 809 S.W.2d 738, *1190 741 (Mo.Ct.App.1991); see also P.S. v. Psychiatric Coverage, Ltd., 887 S.W.2d 622, 625 (Mo.Ct.App.1994).
In their response to the motion for summary judgment, plaintiffs advert only to the facts that Gibson had been a Federal Kemper agent, that Federal Kemper knew he used its refund application forms, and that he was involved in the processing of the surrender value refund applications. These facts, in the undisputed factual context of the case, are insufficient to indicate that Gibson was Federal Kemper's agent.
A determination of whether Gibson was Federal Kemper's agent or the Woepke's agent or broker, depends upon the circumstances of the specific transaction being considered. Electro Battery Mfg. Co. v. Commercial Union Ins. Co., 762 F.Supp. 844, 848 (E.D.Mo.1991); Schimmel Fur Co. v. Am. Indem. Co., 440 S.W.2d 932, 938 (Mo.1969).
To prove that Gibson was Federal Kemper's agent when Gibson misappropriated the Woepkes' annuity balance checks, the Woepkes must prove that Federal Kemper's conduct was such that an ordinarily careful individual investor in the plaintiffs' circumstances would be justified in believing that Gibson was authorized by Federal Kemper to reinvest the Woepkes' money with a competing financial institution; that Federal Kemper knew or had reason to know that Gibson would do so; and that the Woepkes reasonably relied on Federal Kemper's conduct in this regard. See Federal Enterprises, Inc. v. Greyhound Leasing & Financial Corp., 849 F.2d 1059, 1063-64 (8th Cir.1988); Springfield Television, Inc. v. Gary, 628 S.W.2d 398, 403 (Mo.Ct.App.1982). "A person dealing with a supposed agent has a duty to ascertain for themselves the fact and scope of agency and must display that degree of common sense which distinguishes good faith from blind faith." Link v. Kroenke, 909 S.W.2d 740, 745 (Mo.Ct. App.1995).
In this case, the Woepkes have not shown the existence of any substantial evidence that supports the assertion that they reasonably believed Federal Kemper had authorized Gibson as its agent to take the Woepkes' money and reinvest it with a competing company. Because Gibson was only a general agent of Federal Kemper, it may have expected that he might do such a thing, as general agents frequently do. One person may be a general agent for more than one financial institution. State ex rel. Cameron Mut. Ins. Co. v. Koehr, 850 S.W.2d 374, 375 (Mo.Ct.App.1993). Nothing in the record before the Court indicates that the Woepkes reasonably believed Gibson was obligated to devote his services totally to Federal Kemper; in fact, they expected he would reinvest their money away from Federal Kemper. Further, nothing in the record indicates that Federal Kemper knew facts which reasonably indicated that Gibson would likely steal the Woepkes' money.
When the Woepkes empowered Gibson to take control and possession of their money, as they did when they signed the Federal Kemper forms in blank, they made him their agent for the reinvestment of the money. For this purpose, he was not then also the agent of Federal Kemper. Nothing in the record or the law indicates that Federal Kemper is responsible for Gibson's theft of the Woepkes' money.
For these reasons, defendant Federal Kemper is entitled to summary judgment. An appropriate order is issued herewith.
NOTES
[1] At the hearing on the instant motion, it became clear that plaintiffs are no longer asserting their conversion and gross negligence claims. No evidence indicates that Federal Kemper acquired the use of the annuity check monies, or intended that Gibson misuse the monies, after the checks were issued. Thus, there is no claim for conversion. See Owens v. Automobile Recovery Bureau, Inc., 544 S.W.2d 26, 33 (Mo.Ct.App.1976). Similarly, there is no evidence of gross negligence sufficient to support the Count II claim.