987 F.2d 1335
 23 Envtl. L. Rep. 20,869
 FARMLAND INDUSTRIES, INC., Appellee/Cross-Appellant,
v.
MORRISON-QUIRK GRAIN CORPORATION, a dissolved Nebraska
corporation; Morrison Enterprises, a Nebraska
partnership, Appellants/Cross-Appellees.
 Nos. 92-1322, 92-1390.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 10, 1992.
Decided March 8, 1993.
Rehearing Denied May 11, 1993.
 
 William T. Session, Kansas City, MO, argued (Richard H. Ralston and Miriam Glueck, Kansas City, MO, and Scott Davis, Lincoln, NE, on brief), for appellants.
 Alvin D. Shapiro, Kansas City, MO, argued (Terry R. Wittler, Lincoln, NE and Edmund S. Gross, Kansas City, MO, on brief), for appellee.
 Before FAGG, BEAM, and HANSEN, Circuit Judges.
 BEAM, Circuit Judge.
 
 
 1
 Morrison Enterprises and Farmland Industries[1] appeal from jury verdicts denying them indemnity for response costs incurred under the Comprehensive Environmental Response Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. (CERCLA). The facts of this case were hotly contested, both at trial and on appeal. Some facts, however, are uncontroverted, and these facts form the basis for our decision. We therefore reverse and remand for a new trial without reaching the issues of credibility raised by the parties.
 
 I. BACKGROUND
 
 2
 The Environmental Protection Agency added the FAR-MAR-CO subsite ("subsite"), near Hastings, Nebraska, to the National Priorities List in 1986. Because of soil and groundwater contamination found at and near the subsite, it was designated a "Superfund" site. In 1988 the United States brought a CERCLA action against Morrison Enterprises ("Morrison") for past and future response costs incurred by the government at the subsite.
 
 
 3
 On May 4, 1990, the district court entered partial summary judgment in favor of the United States in its suit against Morrison. United States v. Morrison-Quirk Grain Corp., No. 88-L-720 Memorandum Opinion and Order, 1990 WL 482139 (D.Neb. May 4, 1990) ("previous case"). In this previous case, the district court determined that Morrison owned the subsite during the time that a hazardous release occurred, and that Morrison was a responsible person under 42 U.S.C. § 9607(a)(2).[2] The court expressly stated in the previous case, however, that its holding was not based on a determination that Morrison had caused the contamination at the subsite.
 
 
 4
 Shortly after the government filed suit against Morrison in 1988, Farmland Industries ("Farmland") filed this declaratory judgment action against Morrison. Farmland sought a ruling that Morrison would be liable for any response costs incurred by Farmland in connection with the investigation and clean-up of the subsite. Morrison filed a counterclaim against Farmland seeking contribution and indemnity for costs already incurred and for any future costs incurred in connection with the clean-up of the subsite.[3]
 
 
 5
 Morrison owned the subsite from 1954 until 1975, when Farmland purchased the site. The subsite consists of approximately 100 acres, and includes a number of grain elevators. Morrison operated a grain storage and handling business at the subsite during the years that it owned the property. In connection with its business activities, Morrison stored liquid grain fumigants, including Max-Kill 10, in a 3000- to 4000-gallon tank on top of Grain Elevator No. 2. Max-Kill 10 is a liquid grain fumigant that contains carbon tetrachloride and ethylene dibromide. Both carbon tetrachloride and ethylene dibromide are hazardous substances as defined in 42 U.S.C. § 9601(14).
 
 
 6
 In 1959, a grain dust explosion occurred at the grain elevator facility at the subsite. The explosion dislodged the large Max-Kill 10 storage tank from its position on top of Grain Elevator No. 2. According to insurance claims filed at the time, 940 gallons of Max-Kill 10 were lost as a result of this explosion.
 
 
 7
 When Farmland acquired the subsite from Morrison in 1975, it also purchased the storage tank. At the time of Farmland's purchase, the storage tank contained approximately 2500 gallons of Max-Kill 10. Farmland used both liquid and solid grain fumigants at the subsite. Sometime between 1982 and 1983, Farmland discovered that the Max-Kill 10 storage tank was empty.
 
 
 8
 The jury heard all of the evidence and returned a verdict for Morrison on Farmland's claim, and a verdict for Farmland on Morrison's counterclaim. Both parties filed post-trial motions seeking judgment notwithstanding the verdict, or in the alternative, seeking a new trial. The district court denied these motions, and the parties appealed.
 
 II. DISCUSSION
 
 9
 The parties raise numerous issues on appeal. Farmland contends that the district court erred when it failed to accord collateral estoppel effect to the previous case brought against Morrison by the government. Morrison contends that the district court erroneously instructed the jury, thereby preventing the jury from properly considering Morrison's indemnity claim. Both parties also allege numerous other errors.
 
 A. Collateral Estoppel
 
 10
 Farmland contends that the district court should have accorded collateral estoppel effect to the previous case. In that decision, the district court found Morrison to be a responsible person under 42 U.S.C. § 9607. As a responsible person under the statute, Morrison is liable to the government for any response costs it incurred at the subsite. According to Farmland, principles of collateral estoppel mandate a finding that Morrison caused the contamination at the subsite. We do not agree. Farmland's argument is based on a misunderstanding of the holding in the previous case.
 
 
 11
 Under 42 U.S.C. § 9607, liability to the United States for CERCLA response costs is a matter of strict liability. See United States v. Monsanto Co., 858 F.2d 160, 168 (4th Cir.1988), cert. denied, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989); New York v. Shore Realty Corp., 759 F.2d 1032, 1042 (2d Cir.1985). Liability, therefore, is not dependent on any showing of causation or fault. New York v. Shore Realty, 759 F.2d at 1044-45 ("Congress specifically rejected including a causation requirement in section 9607(a).... We will not interpret section 9607(a) in any way that apparently frustrates the statute's goals...."); United States v. Bliss, 667 F.Supp. 1298, 1304 (E.D.Mo.1987) ( [l]iability under CERCLA is strict, without regard to the liable party's fault or state of mind). In the previous case, the district court correctly concluded that causation was not at issue in a section 9607 recovery action. United States v. Morrison-Quirk Grain Corp., No. 88-L-720 Memorandum and Order at 2-3 (D.Neb. June 20, 1990). Therefore, the previous case determined only that Morrison was a responsible party under section 9607. Farmland Indus., Inc. v. Morrison-Quirk Grain Corp., No. 88-L-718 Memorandum and Order at 1 (D.Neb. Dec. 31, 1991), Appellant's Addendum at 2. Causation was simply not at issue.
 
 
 12
 Before collateral estoppel will bar relitigation of a factual issue in a subsequent proceeding, the prior determination must satisfy a four-part test:
 
 
 13
 (1) the issue sought to be precluded must be the same as that involved in the prior action;
 
 
 14
 (2) the issue must have been litigated in the prior action;
 
 
 15
 (3) the issue must have been determined by a valid and final judgment; and
 
 
 16
 (4) the determination must have been essential to the prior judgment.
 
 
 17
 In re Miera, 926 F.2d 741, 743 (8th Cir.1991). The party asserting collateral estoppel bears the burden of proving that a prior decision satisfies all four elements of the test. Id.; Spilman v. Harley, 656 F.2d 224, 229 (6th Cir.1981). If the party against whom the earlier decision is being asserted did not have a full and fair opportunity to litigate the issue in question collateral estoppel does not apply. In re Miera, 926 F.2d at 743; Lovell v. Mixon, 719 F.2d 1373, 1376 (8th Cir.1983). Farmland cannot satisfy any part of this test. Therefore, the district court did not err when it refused to give collateral estoppel effect to the previous case.
 
 
 18
 The issue of whether Morrison should be liable to Farmland for any expenses incurred as a result of contamination at the subsite is inextricably linked to causation.[4] General Electric Co. v. Litton Indus. Automation Sys., Inc., 920 F.2d 1415, 1417 (8th Cir.1990) (a private party seeking to recover response costs from a section 9607 responsible party must prove that the release of hazardous substances caused the response costs at issue), cert. denied, --- U.S. ----, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991). The district court, however, specifically refused to consider issues of causation in the previous case. The district court ruled that Morrison was a responsible person under section 9607 because:[a]dequate evidence has been presented to indicate that no question remains as to whether some type of release into the environment occurred at the Far-Mar-Co site, either as a result of the explosion, spilling and leaking, or pouring the fumigant in rat holes.
 
 
 19
 I do not decide at this time whether Morrison-Quirk is solely responsible for the response costs....
 
 
 20
 United States v. Morrison-Quirk Grain Corp., No. 88-L-720, Memorandum and Order at 8, 1990 WL 482139 (D.Neb. May 4, 1990), Appellee's Addendum at 8. The district court only determined that: (1) the subsite was a facility; (2) a threatened release or a release from the subsite had occurred; (3) the release or threatened release caused the United States to incur response costs; and (4) the defendant is a responsible party. Id. at 3 (citing United States v. Aceto Agric. Chems. Corp., 872 F.2d 1373, 1378-79 (8th Cir.1989)).
 
 
 21
 Farmland relies on the third element, that "the release or threatened release caused the United States to incur response costs," as support for its collateral estoppel argument. However, the record belies this interpretation of the previous case. In its discussion of the third element, response costs, the district court stated:
 
 
 22
 [t]he requirement for proof of response costs has also been met. The United States has alleged that it has incurred almost $2 million in responding to contamination at this site.... No question has been raised about whether the United States has incurred costs to investigate and develop a plan for responding to the contamination.
 
 
 23
 United States v. Morrison-Quirk, Memorandum and Order at 4, Appellee's Addendum at 4. Satisfaction of this element required merely a determination that the United States had, in fact, incurred response costs, and involved no judgment as to causation. Since causation was not at issue in the prior proceeding, there can be no collateral estoppel on that issue.
 
 
 24
 The district court properly held that collateral estoppel prevented Morrison from claiming that a release did not occur at the facility while Morrison was an owner or operator. Transcript, Vol. IX, p. 1804-06. The issue of a release had been fully and fairly litigated in the prior proceedings. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331-33, 99 S.Ct. 645, 651-53, 58 L.Ed.2d 552 (1979) (collateral estoppel applies when an issue has been fully and fairly litigated in a prior action, and the parties involved in the second action are bound by the first decision).
 
 B. Summary Judgment Motion
 
 25
 Morrison contends that the district court erred when it denied Morrison's motion for partial summary judgment as to Farmland's liability. Morrison does not deny that a release occurred while Morrison owned or operated the facility, but instead argues that such a release did not cause the contamination at the site. Farmland does not contest that under 42 U.S.C. § 9607(a)(1) it is a present owner of a facility and therefore is also a responsible person under CERCLA. The government clearly could have brought a CERCLA action against Farmland to recover the costs of clean-up at the subsite. This fact, however, does not require a finding that Farmland is jointly and severally liable with Morrison for response costs incurred at the subsite.
 
 
 26
 The government is free to proceed against any potentially responsible person, either individually or in conjunction with other potentially responsible persons. However, as discussed previously, a private party cannot predicate a claim for contribution or indemnity solely upon section 9607(a) liability to the government, but must also prove causation. We find, therefore, that the district court did not err in refusing to grant Morrison's motion for partial summary judgment on the issue of liability.
 
 C. Jury Instructions
 
 27
 Morrison contends that the jury instructions given by the district court incorrectly stated the law governing the allocation of response costs between private parties, and incorrectly characterized the fact issues that the jury was to determine. When reviewing a trial court's jury instructions for error, we must consider the instructions in their entirety. Williams v. Valentec Kisco, Inc., 964 F.2d 723, 731 (8th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992); Crimm v. Missouri Pac. R.R. Co., 750 F.2d 703, 711 (8th Cir.1984). Moreover, a single erroneous instruction does not require reversal if the charge as a whole fairly and adequately submits the issues to the jury. Bold v. Simpson, 802 F.2d 314, 318 (8th Cir.1986); Total Petroleum, Inc. v. Davis, 788 F.2d 476, 484 (8th Cir.1986).
 
 
 28
 This court has previously enunciated three basic points that a reviewing court must keep in mind when assessing the adequacy of jury instructions: (1) that the purpose of giving jury instructions is to inform the jury of various permissible ways of resolving the issues in the case; (2) that a party is entitled to an instruction reflecting the party's theory of the case if the instruction is legally correct and there is evidence to support it; (3) that the district judge has broad discretion in choosing the form and language of the jury instructions. Federal Enter., Inc. v. Greyhound Leasing & Fin. Corp., 786 F.2d 817, 820 (8th Cir.1986). Keeping these factors in mind, we review the contentions raised by Morrison.
 
 1. Previous Case Instruction
 
 29
 The district court was concerned that trial testimony about the previous case would confuse the jury. Therefore, the court gave a Previous Case Instruction before the commencement of the trial. This instruction was intended to explain the court's prior holding and to cure any uncertainty the jury might have regarding what was and was not decided in the previous case. Transcript Vol. 1, pp. 9-20. The Previous Case Instruction stated:
 
 
 30
 During the course of this trial you may hear about another case involving the defendant, Morrison-Quirk Grain Corporation, and the United States of America. In that case I determined as a matter of law that at the time Morrison-Quirk Grain Corporation owned the Far-Mar-Co site, which is the site involved in this present case, a hazardous substance, namely Max-Kill 10, was released; that that release caused the United States to incur response costs; and that Morrison-Quirk was a person responsible for the response costs incurred by the United States.
 
 
 31
 I did not decide in that case that Morrison-Quirk caused any contamination at the Far-Mar-Co site, either while the site was owned by Morrison-Quirk or while it has been owned by Farmland Industries, Inc. I made no decision as to whether Farmland is or is not a person responsible for any response costs or for any contamination.
 
 
 32
 It will be for you to decide in this case whether the actions of Farmland or Morrison-Quirk caused contamination at the site and who is responsible for any response costs incurred by Farmland or Morrison-Quirk.
 
 
 33
 Appellee's Addendum at 12 (emphasis added). In this instruction, the court properly defined the issue before the jury as the causation of the contamination at the subsite.
 
 
 34
 This instruction told the jury that as a matter of law Morrison was the owner of the site at the time a hazardous substance was released, that this release caused the United States to incur response costs, and that Morrison was a person responsible for response costs incurred by the United States.[5]
 
 
 35
 The district court, as indicated, instructed the jury that it was to determine causation:
 
 
 36
 It will be for you to decide in this case whether the actions of Farmland or Morrison-Quirk caused contamination at the site and who is responsible for any response costs incurred by Farmland or Morrison-Quirk.
 
 
 37
 Appellee's Addendum at 12. This instruction correctly framed the issue for the jury in terms of causation of the contamination at the subsite. However, the instructions on Morrison's counterclaim, given at the close of the evidence, defined the elements of Morrison's claim in terms of causation of response costs. Morrison correctly objected to the proposed instructions on the grounds that the issue for the jury should have been which party caused the contamination at the subsite, and therefore under the equitable principles of section 9613 should pay the costs of clean-up. Morrison argued that the proper instruction must be in terms of causation of the contamination.
 
 
 38
 We think there must be a linkage between the contamination that's out there and Farmland incurring response cost. [sic] As long as tha's [sic] the case they are entitled to get their money. But they're not entitled to get money just because a release occurred on the site.
 
 
 39
 I don't want to belabor this but, ... if Morrison spilled a cup on to the soil in 1959 and it all evaporated that's a release. But that didn't cause present day contamination, that didn't cause anyone to incur response cost....
 
 
 40
 Transcript vol. IX at 1809.
 
 
 41
 The district court overruled Morrison's objections, and, on Morrison's counterclaim, instructed the jury that:
 
 
 42
 In your verdict you must find in favor of Morrison-Quirk on its counterclaim against Farmland, if all of the following elements have been proved by the greater weight of the evidence:
 
 
 43
 First, Farmland was an owner or operator of the FAR-MAR-CO subsite at the time of a release of Max-Kill 10, a liquid grain fumigant containing the hazardous wastes ethylene dibromide (EDB) and carbon tetrachloride (CCL sub4 ); and
 
 
 44
 Second, the release of Max-Kill 10 while Farmland owned or operated the FAR-MAR-CO subsite was the sole cause of the incurrence of response costs by Morrison-Quirk; and
 
 
 45
 Third, the amount of these response costs that were caused by the release during the Farmland ownership of the subsite and that were necessary costs of response.
 
 
 46
 Appellee's Addendum at 14 (emphasis added). In evaluating the adequacy of the jury instructions given in this case, we must read this instruction in conjunction with the Previous Case Instruction, which informed the jury that Morrison was liable to the government for response costs because there was a Max-Kill 10 release at the time Morrison owned the subsite. As stated previously, the district court did not inform the jury that this previous case had been brought under a theory of strict liability and was not a fault-based determination.
 
 
 47
 Reading these instructions together, we are forced to conclude that the district court's instructions were, at least, incomplete. The second paragraph of this counterclaim instruction, read in conjunction with the previous case instruction made it difficult, if not impossible, for the jury to find for Morrison. The court had already told the jury that as a matter of law Morrison "caused the United States to incur response costs," and that Morrison was "a person responsible" for those costs. Therefore, without further explanation of the CERCLA statutory scheme, the jury may have had difficulty concluding that Farmland was "the sole cause of the incurrence of response costs by Morrison-Quirk."[6] Had the district court given more detailed instructions on the various facets of CERCLA liability, or had it explained the difference between the standards for liability to the government under section 9607 and for liability to a third party under section 9613, these instructions might have been a harmless error. In the absence of further direction, these instructions tended to be confusing, and, therefore, could have resulted in prejudice to Morrison. We are left with "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations," Horton v. Buhrke, Div. of Klein Tools, Inc., 926 F.2d 456, 460 (5th Cir.1991), and cannot conclude that "the charge, taken as a whole ... fairly and adequately submits the issues in the case to the jury." Federal Enter., 786 F.2d at 820.
 
 2. Person Responsible
 
 48
 In its Previous Case Instruction, the district court used the phrase "person responsible" to describe Morrison. From the context, it seems that the district court was using "person responsible" as a synonym for "responsible party" under CERCLA. The district court did not define "person responsible" as used in its instructions. When technical legal usage gives ordinary words a specific definition which is distinct from the ordinary meaning of those words, a court should explain those terms for the jury. Id. (failure to define key legal terms resulted in deficient instructions); Harold v. Corwin, 846 F.2d 1148, 1150-51 (8th Cir.1988) (prejudicial error occurred when the district court read the jury a misleading dictionary definition for a legal term).
 
 
 49
 Webster's Dictionary defines "responsible" as: "likely to be called upon to answer; answerable as the primary cause, motive, or agent whether of evil or good; creditable or chargeable with the result." Webster's New International Dictionary 1935, (3d ed., 1965) (emphasis added). The jury was instructed that: "[y]ou are entitled to consider ... evidence in the light of your own observations and experiences in the affairs of life," and that "[t]he law demands of you a just verdict, unaffected by anything except the evidence, your common sense, and the law as I give it to you." Without appropriate instructions, a jury of lay persons will not know that "responsible person" as used in CERCLA litigation,[7] or "person responsible" as used in the district court's instructions, bears little relation to this everyday English definition of responsible. In the absence of a definition of the term "person responsible" the jury was left to apply their common sense. Unfortunately, in this case, the common sense definition of "person responsible" conflicts with the applicable law. The omission of a CERCLA definition of "person responsible" resulted in prejudice to Morrison.
 
 3. Other Instructions
 
 50
 Morrison also objects to the Statement of the Case Instruction given at the close of the evidence.[8] The instruction directed the jury that:
 
 
 51
 It will be your duty to decide from the evidence whether the plaintiff is entitled to a verdict against the defendants or whether the defendants are entitled to a verdict against the plaintiff or whether both the plaintiff and the defendants are entitled to a verdict against each other or whether neither the plaintiff nor the defendants is entitled to a verdict against the other.
 
 
 52
 Appellee's Addendum at 13 (emphasis added). Morrison objects to the underlined portion of this instruction on the grounds that the jury could not rationally find that both parties, or that neither party was responsible. We agree that the district court erred in instructing the jury that it could find both Morrison and Farmland to be entitled to a verdict against the other in this case. The district court had already instructed the jury that each party claimed that the other was solely responsible for any and all response costs incurred at the subsite. The jury could not logically have found that both Farmland and Morrison were solely responsible for the contamination of the site.[9] We are convinced, however, that this part of the court's instruction should not have been given.
 
 
 53
 Morrison further contends that this same instruction is erroneous because it permitted the jury to find that neither Morrison nor Farmland were entitled to a verdict. Morrison seems to contend that the jury was obligated to find for either Morrison or Farmland. We do not agree. It was certainly possible for a rational jury to conclude that neither party carried its burden of proof that the other party solely caused the contamination at the subsite. That is a risk inherent in an all or nothing argument. Accordingly, we find this instruction to be proper and appropriate.
 
 
 54
 The parties have raised numerous other objections to the proceedings below. We have carefully considered these objections and find them to be without merit.
 
 III. CONCLUSION
 
 55
 For the reasons stated above, we reverse and remand for a new trial.
 
 
 56
 Morrison Enterprises is the successor to Morrison-Quirk Grain Corporation. Farmland Enterprises is the successor to FAR-MAR-CO Inc. For the purposes of this litigation, the parties have stipulated that as successor corporations they are responsible for the CERCLA liability of their predecessors.
 
 
 
 [2]
 42 U.S.C. § 9607 provides in relevant part:
 (a)(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, ...
 shall be liable for--
 (A) all costs of removal or remediation action incurred by the United States Government or a State not inconsistent with the national contingency plan;
 (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; ....
 
 
 [3]
 Farmland's claim and Morrison's counterclaim were both brought under 42 U.S.C. § 9613 which provides:
 (f)(1) Contribution
 Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title.... In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 or section 9607 of this title.
 Because each of the parties sought to hold the other "solely" liable, we have labeled this an indemnity action even though the statute speaks in terms of contribution.
 
 
 [4]
 The district court did not give a contribution instruction, because the arguments presented by the parties focused on indemnity rather than divisibility of harm. Farmland Indus., Inc. v. Morrison-Quirk Grain Corp., No. 88-L-718 Memorandum and Order at 2 (D.Neb. Dec. 31, 1991)
 
 
 [5]
 The district court did not instruct the jury on the strict liability nature of the CERCLA statute, and did not inform the jury that Farmland, as a present owner, was also a responsible party under section 9607(a)(1)
 
 
 [6]
 The difficulty in instructing a jury in this area of the law is enhanced by the fact that under section 9607 responsibility to the government for response costs is triggered by the release of a hazardous substance, rather than by the causation of contamination. The previous case found that a release had occurred while Morrison owned the subsite. Therefore, even if a later release that occurred during Farmland's ownership of the site was the sole cause of the contamination at the subsite and Morrison's release was merely a fortuitous coincidence, under section 9607 Morrison would still be liable to the government for response costs
 This case, however, was not a section 9607 case, and did not turn on strict liability. Instead, it involved that part of the statutory scheme, section 9613, which was designed to permit a party who can prove that it caused no contamination or only partial contamination to obtain contribution.
 
 
 [7]
 In the context of CERCLA litigation, the term "responsible person" means any party that is liable under section 9607. As discussed previously, the term specifically does not have any causation element
 
 
 [8]
 Because these issues may recur on remand, we address them here
 
 
 [9]
 Under the statute, both Morrison and Farmland could be liable for causing the need for cleanup of the subsite. The parties did not proceed, however, on a contribution theory. We do not suggest that contribution is unavailable under section 9613, but merely note that this case was not tried as a contribution action