**FARMLAND INDUSTRIES, INC., Plaintiff,**

**v.**

**COLORADO & EASTERN RAILROAD COMPANY, INC., Great Northern Transportation Company, and Gary Flanders, Defendants.**

**Civil Action No. 89–B–1786.**

United States District Court,
D. Colorado.

April 9, 1996.

Wayne B. Schroeder, Jody Harper Alderman, Grimshaw & Harring, Denver, CO, for Plaintiff.

Timothy R. Gablehouse, Joshua B. Epel, Karina M. Thomas, Gablehouse & Epel, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendant Farmland Industries moves for partial summary judgment pursuant to Fed. R.Civ.P. 56 on the issue whether defendants Colorado & Eastern Railroad Company (CERC), Great Northern Transportation Company (GNTC) and Gary W. Flanders (collectively the CERC parties) caused additional cleanup costs incurred by Farmland Industries, Inc. (Farmland) at the Woodbury Chemical Company Superfund Site. The CERC parties also move for summary judg-

ment, claiming they are not liable to Farmland under § 9613(f)(1) of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 et. seq., because they did not "cause" the incurrence of additional response costs. The history of this litigation is found in *U.S. v. Colorado & Eastern Railroad Co.*, 50 F.3d 1530, 1536 (10th Cir.1995). The motions are fully briefed and heard. After reviewing the briefs and listening to the arguments, I hold that Farmland is entitled to summary judgment on the issue of liability. I further hold that partial summary judgment in favor of Farmland on the issue of causation is appropriate because the CERC parties conduct constituted a cause of the additional response costs incurred by Farmland but genuine issues of fact remain to determine and quantify equitably the amount of Farmland's recovery. I deny the CERC parties' motion for summary judgment holding that causation is not an element of a prima facie claim for contribution.

### I.

The following facts are not genuinely disputed. A pesticide formulation plant was operated by Woodbury Chemical Company from mid 1950 until the late 1960s in Commerce City, Colorado. In May of 1965, a fire destroyed the main facility. The fire caused pesticide ridden rubble to contaminate the property. In the late 1960's, a former subsidiary of Farmland, Missouri Chemical Company, acquired the plant. Missouri Chemical sold the plant to McKesson Corporation in 1971.

In September of 1983 the Environmental Protection Agency (EPA) determined that releases of hazardous substances were occurring on the property. A 2.2 acre parcel was placed on the National Priorities List as the Woodbury Chemical Superfund Site (the Site).

In 1984, CERC purchased two parcels adjacent to the Site. CERC was owned by Gary Flanders. CERC was later transferred to GNTC, also owned by Flanders. CERC purchased the parcels for the purpose of operating the short line railroad tracks located along the northern edge of the Site. The

EPA notified CERC of its potential liability for releases and threatened releases from the Site on August 26, 1985. In September of 1986, the Site was amended to include the CERC property. From 1986 to August 1, 1989, the tracks were operated by a subsidiary of CERC, Denver Terminal Railroad Company. After August 1, 1989, the tracks were sold to an unrelated third party known as Denver Railway Company (DRC). The tracks were owned and operated exclusively by DRC pursuant to a lease and easement agreement.

During the summer and fall of 1989 the tracks were at times covered with sand and silt from erosion caused by heavy storms at the Site. On at least one occasion, earth moving equipment was used to remove the material from the tracks.

On September 4, 1990, McKesson and Farmland entered into a partial consent decree with the government in which they agreed to remediate the site and reimburse the government $700,000 for response costs. McKesson and Farmland incurred site remediation costs in excess of 15 million dollars. This included $1,439,330 paid to remove soil and debris from the CERC property of which Farmland's share was $734,-058.30. Farmland claims that the CERC parties are responsible for the 734,058.30 of removal costs because they conducted excavation activities on their property which breached a drainage ditch causing additional contamination. Farmland also asserts that CERC failed to fence its property or grant Farmland access to the property to fence it and, thus, third parties were permitted to dump refuge and other debris on the property creating additional contamination.

## II.

Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322,

106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e).

Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence present in the motion and response. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. at 2512; *Mares,* 971 F.2d at 494.

## III.

This case is on remand from the Tenth Circuit Court of Appeals for determination whether the CERC parties are liable for contribution under § 9613(f)(1) of CERCLA. 42 U.S.C. § 9613(f)(1). In the previous case, Judge Carrigan determined that Farmland could recover its costs from the CERC parties under § 9607 of CERCLA, 42 U.S.C. § 9607, which imposes strict liability on po-

tentially responsible persons (PRPs). The Tenth Circuit held that an action between PRPs is a claim for contribution under § 9613(f)(1) and remanded for determination whether Farmland has a claim for contribution. *Colorado & Eastern Railroad,* 50 F.3d at 1539.

■ The pivotal issue that must be resolved is whether causation is a prima facie element of liability for contribution under § 9613(f)(1). The CERC parties argue that the plaintiff in a § 9613(f)(1) action must show that: (1) the defendant is a PRP under § 9607(a); (2) the party against whom contribution is sought *caused* conditions at the Site which necessitated clean-up; and (3) the party seeking contribution has paid more than its fair share of the cleanup costs. In contrast, Farmland argues that causation is not an element of their claim at this juncture. Rather, § 9613(f) only requires a plaintiff to prove liability or potential liability under § 9607(a) and the plaintiff's incurrence of response costs. I agree with Farmland.

Section 9613 provides:

Any person may seek contribution from any other person *who is liable or potentially liable under section 9607(a)* of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, *the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.*

42 U.S.C. § 9613(f)(1) (emphasis added). In *Environmental Transp. Systems, Inc. v. ENSCO, Inc.,* 969 F.2d 503, 509 (7th Cir. 1992) (cited with approval in *Colorado & Eastern Railroad,* 50 F.3d at 1536), the Seventh Circuit set forth the elements of a prima facie case for contribution under § 9613(f) as follows: "(1) that the site in question is a "facility" as defined by CERCLA; (2) that the Defendant is a "responsible person" for the spill as defined by CERCLA; (3) there was a release of hazardous substances; and (4) such release caused the Plaintiff to incur response costs." *Id.* at 506. "If the plaintiff

establishes each of these elements and the defendant is unable to establish the applicability of one of the defenses listed in § 9607(b) the plaintiff is entitled to summary judgment on the liability issue." *Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 668 (5th Cir.1989). A prima facie showing under § 9613 is, therefore, simply a determination that under § 9607 the defendant would be jointly and severally liable. *See U.S. v. Colorado & Eastern Railroad Co., Inc.,* 1993 WL 350171 (D.Colo.1993).

Citing *Farmland Industries, Inc., v. Morrison–Quirk Grain Corp.,* 987 F.2d 1335, 1340 (8th Cir.1993), the CERC parties argue that, in addition to establishing the CERC parties are responsible persons under CERCLA, Farmland must also prove the CERC parties caused the conditions on the property which in turn caused Farmland to incur additional response costs. At trial, it was undisputed that the CERC parties were owners or operators within the meaning of § 9607(a); the site was a facility; there was a release of hazardous substances; and the release caused Farmland to incur response costs. The CERC parties argue, however, that Farmland cannot show that CERC caused the spread of pesticide chemicals around the Site, the washout of contaminated soil, or the accumulation and contamination of household debris. Because Farmland cannot prove causation they contend it cannot prove liability and, thus, the CERC parties are entitled to summary judgment.

Neither § 9613(f) nor the Tenth Circuit's opinion in *U.S. v. Colorado & Eastern Railroad Co.,* 50 F.3d 1530 (10th Cir.1995), require that such causation be proven to establish liability under CERCLA's contribution provision. As stated by the Tenth Circuit, "'Causation' in the context of this case means whether CERC caused the increase in the expense of remediation. If it did, that would be an equitable factor for the court to consider under § 113(f)(1). All concerned acknowledge that liability under § 9607 is strict and causation would be irrelevant in that context." *Id.* at 1534. Contrary to the CERC parties' assertions, the Tenth Circuit does not state that in the absence of causation Farmland has no claim for contribution.

In *FMC Corporation v. Aero Industries, Inc.*, 998 F.2d 842, 845 (10th Cir.1993), the Tenth Circuit held that a prima facie case of liability for a cost recovery claim under CERCLA requires a plaintiff to prove "(1) the site is a facility as defined in 42 U.S.C. § 9601(9), (2) defendant is a responsible person defined in 42 U.S.C. § 9607(a), (3) the release or threatened release has occurred, and (4) the release or threatened release has caused the plaintiff to incur response costs." *Id.* Thus, regardless of whether the claim is brought under § 9607 or § 9613 the liability determination is based on the same elements. Causation is not part of the liability inquiry.

The legislative history and statutory language support a determination that a plaintiff need not prove causation to establish liability under § 9613(f). The purpose of CERCLA is to ensure the effective and efficient response to hazardous waste releases or the threat of hazardous waste releases. *A Legislative History of the Comprehensive Environmental Response, Compensation and Liability Act of 1980*, Senate Committee of Environment and Public Works, S.Doc. No. 97–14, 97th Cong., 2d Sess.1983. Either a governmental entity or a private party may respond to a release of hazardous substances and seek relief under CERCLA. *Colorado & Eastern* established that when the party seeking recovery is a responsible party under § 9607(a), his claim against another PRP is pursuant to § 9613(f)(1). Causation in the context of a § 9607(a) action is irrelevant to liability for response costs because the statute sets forth the categories of persons that are liable for response costs and imposes joint and several liability. A liable party under § 9607(a) is limited to the statutory defenses in § 9607(b). If a liable party is unable to establish a § 9607(b) defense, he becomes potentially liable for all response costs regardless of his proportionate fault. Thus, the statute imposes harsh results on parties who may have minimum or de minimus responsibility for the contamination but who the government proceeds against to facilitate clean-up in the most expedient manner. This is most often the case when the present owner or operator is held liable for response costs regardless of whether he con-ducted activities involving hazardous wastes on the property.

Section 9613(f)(1), therefore, provides a contribution mechanism for a party who bears more than his proportionate share of response costs. *United Technologies Corp. v. Browning–Ferris Industries, Inc.*, 33 F.3d 96, 103 (1st Cir.1994). As reflected by the case law interpreting § 9607, establishing causation in hazardous waste cases is a daunting task at best. *See United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 264–65 (3rd Cir.1992). A site may consist of property owned by several different persons all of whom are innocent as to the disposal of hazardous substances. If one of those persons is held accountable for response costs, a causation requirement could effectively preclude him from recovery from other landowners even though he is equally faultless. Further harsh consequences could result where a prior landowner who disposed of hazardous wastes on his property and sold his property at a discount based on the contamination is found liable under § 9607. A causation requirement would prevent him from proceeding against the present landowner even though the present owner benefitted from the clean-up and was aware of the contamination at the time of purchase.

The statutory language permitting a court to allocate response costs among liable parties using such "equitable factors as the court determines appropriate" adequately addresses these concerns. At this juncture, causation may, if appropriate, become a relevant factor in the contribution equation. One who caused the contamination is likely to be accountable for some of the response costs but, as discussed, one who did not cause the contamination is not necessarily without culpability.

The Eighth Circuit in *Morrison–Quirk Grain Co.* fails to provide any basis for its conclusion that a plaintiff asserting a § 9613 claim has the increased burden of establishing causation in order to prove liability. *Morrison–Quirk Grain Corp.*, 987 F.2d at 1340. Indeed the Eighth Circuit seems to confuse liability with culpability. Liability is established by proving that a person is a responsible person under § 9607 and that

there was a release or threat of release which caused the plaintiff to incur response costs. Culpability is determined by applying equitable factors to the case at hand. Causation is but one of many equitable considerations to be factored into the culpability equation. "In any given case a court may consider several factors, a few factors, or only one determining factor, ... depending on the totality of the circumstances presented to the court. Because allocation of clean-up costs can be based on many equitable factors on which there may be much competing evidence leading to material issues of fact, the issue of contribution may not always be suited to disposition by summary judgment." *ENSCO Inc.,* 969 F.2d at 509–10. Here, numerous factors create material issues of fact which bear on the proper allocation of response costs. Consequently, I deny CERC's motion for summary judgment.

The CERC parties conceded at trial that they are liable under § 9607(a). As stated previously, a prima facie case for contribution liability is established by proving liability under § 9607. This admission by the CERC parties shows that there are no genuine issues of material fact remaining regarding the CERC parties' liability under § 9613(f)(1). Consequently, I will grant summary judgment in Farmland's favor on the liability issue. *Broderick Wood Products Co. v. U.S.,* 195 F.2d 433, 436 (10th Cir.1952); *See Wilder v. Prokop,* 846 F.2d 613, 626 (10th Cir.1988).

▮ Farmland moves for partial summary judgment on the issue of causation as it relates to culpability and the equitable allocation of response costs, asserting that the CERC parties are fully liable for the $734,-058.30. To the contrary, genuine issues of fact remain as to whether the CERC parties conducted any earth-moving activities on their property which caused Farmland to incur additional response costs. The CERC parties provide the affidavit of Tom Mars who states that he owned and operated the tractor used to move the soil off the tracks in May or June of 1989. However, this does not absolve the CERC parties from responsibility for contribution. Questions of fact exist whether CERC exercised sufficient control over the property to be responsible for

Mr. Mars activities on their property. There are also genuine disputes of fact regarding other earth-moving activities on the property. Moreover, questions of material fact remain whether CERC failed to fence its property or timely grant Farmland access to the property to fence it, thus, permitting third parties to dump refuge and other debris on the property creating additional contamination. However, upon the evidence proffered by Farmland no reasonable jury could fail to conclude that the CERC parties were, to some degree, a cause of the increased response costs. Accordingly, I find and conclude that Farmland is entitled to a determination that the CERC parties were a cause of Farmland's incurrence of increased response costs, the degree of which shall be determined at trial. Consequently I grant in part and deny in part Farmland's motion for summary judgment on the causation issue.

Accordingly it is ORDERED that:

1) Defendants' motion for summary judgment is DENIED;

2) Plaintiff's motion for partial summary judgment is GRANTED in part and DENIED in part; and

3) Summary judgment shall enter in favor of plaintiff against defendants that defendants are liable to plaintiff under § 9613(f)(1), the amount to be determined at trial.